# HEAD *v.* AMOSKEAG MANUFACTURING COMPANY.

IN ERROR TO THE SUPREME COURT OF THE STATE OF NEW HAMPSHIRE.

Argued December 16, 17, 1884.—Decided January 5, 1885.

A statute of a State, authorizing any person to erect and maintain on his own land a water mill and mill-dam upon and across any stream not navigable, paying to the owners of lands flowed damages assessed in a judicial proceeding, does not deprive them of their property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States.

Statement of Facts.

This was a writ of error to reverse a judgment of the Supreme Court of the State of New Hampshire against the plaintiff in error, upon a petition filed by the defendant in error (a corporation established by the laws of New Hamsphire for the manufacture of cotton, woolen, iron and other materials) for the assessment of damages for the flowing of his land by its mill-dam at Amoskeag Falls on the Merrimack River, under the general mill act of that State of 1868, ch. 20, which is copied in the margin.*

---

* AN ACT for the Encouragement of Manufactures.

SECT. 1. Any person, or any corporation authorized by its charter so to do, may erect and maintain on his or its own land, or upon land of another with his consent, a water mill, and dam to raise the water for working it, or for creating a reservoir of water, and for equalizing the flow of the same, for its use and of mills below, upon and across any stream not navigable, upon the terms and conditions, and subject to the regulations, hereinafter expressed.

SECT. 2. If the land of any person shall be overflowed, drained, or otherwise injured by the use of such dam, and said damage or injury shall not, within thirty days after due notice thereof, be satisfactorily adjusted by the party erecting or maintaining said dam, either party may apply by petition to the Supreme Judicial Court, in the county or counties where such damage or grievance arises, to have the damage, that may have been or may be done thereby, assessed ; which petition shall set out the title and description of the premises damaged, the right by reason whereof said grievance arises, the location of the dam and extent of the damages that may be occasioned thereby; and said court, after reasonable notice to all persons interested, shall, unless the parties agree upon the judgment that shall be rendered, refer said petition to a committee of three disinterested persons to be appointed by said court, to determine in relation to the matters set forth therein.

SECT. 3. The committee shall give such notice to the parties as shall be ordered by said court ; shall hear the parties and view the premises ; and, if they shall be of opinion that the flowing or draining of said land, to the depth and extent that the same may or can be flowed by said dam, is or may be of public use or benefit to the people of this State, and that the same is necessary for the use of the mill or mills for which said dam was designed, they shall estimate the damages, and make report to the said court at the next term thereof after said view and estimate. Upon the return of the report of said committee, any person interested therein may object to the acceptance of the same for any irregularity or improper conduct of said committee ; and said court may set aside said report for any just and reasonable cause, and, if required, shall inquire for itself whether the erection of said dam is of public use or benefit, any finding of the committee upon that point notwithstanding ;

Statement of Facts.

In the petition filed in the State court, the Amoskeag Manufacturing Company alleged that it had been authorized by its charter to purchase and hold real estate, and to erect thereon such dams, canals, mills, buildings, machines and works as it might deem necessary or useful in carrying on its manufactures and business; that it had purchased the land on both sides of the Merrimack River at Amoskeag Falls, including the river and falls, and had there built mills, dug canals, and established works, at the cost of several millions of dollars, and, for the purpose of making the whole power of the river at the falls available for the use of those mills, had constructed a dam across the river; that the construction of the mills and dam, to raise the water for working the mills, for creating a reservoir of water, and for equalizing its flow, was of public use and benefit to the people of the State, and necessary for the use of the mills for which it was designed; and that Head, the owner of a tract of land, described in the petition, and bounded by the river, claimed

---

and, if the court shall be of opinion that the erection of said dam is not of public use or benefit, the petition shall be dismissed. But if the report shall be accepted and established, the court shall render judgment thereon, after adding fifty per cent. to the estimate of damage; which judgment shall be final, and execution shall issue thereon. Before the reference of such petition to the committee, if either party shall so elect, said court shall direct an issue to the jury to try the facts alleged in the said petition, and assess the damages; and judgment rendered on the verdict of such jury with fifty per cent. added, shall be final, and said court may award costs to either party at its discretion.

SECT. 4. No person or corporation shall derive any title from said proceedings, or be discharged from any liability in relation to said premises, until he or it has paid or tendered to the person aggrieved or damaged the amount of such adverse judgment.

SECT. 5. This act shall in no way affect existing suits, nor any mill of other persons lawfully existing on the same stream, nor any mill-site or mill privilege of other persons on which a mill-dam has been lawfully erected and used, nor the right of any owner of such mill, mill-site or mill privilege, unless the right to maintain on such last mentioned site or privilege shall have been lost or defeated by abandonment or otherwise; neither shall it affect the right of a town in any highway or bridge which said town may by law be liable to keep in repair: Provided, however, that the provisions of this act shall not be applicable to any navigable waters in this State.

SECT. 6. This act shall take effect from and after its passage. [Approved July 3, 1868.]

OCTOBER TERM, 1884.

damages for the overflowing thereof by the dam, which the corporation had been unable satisfactorily to adjust; and prayed that it might be determined whether the construction of the mills and dam, and the flowing, if any, of Head's land to the depth and extent that it might or could be flowed thereby, were or might be of public use or benefit to the people of the State, and whether they were necessary for the mills, and that damages, past or future, to the land by the construction of the dam might be assessed according to the statute.

At successive stages of the proceedings, by demurrer, by request to the court after the introduction of the evidence upon a trial by jury, and by motion in arrest of judgment, Head objected that the statute was unconstitutional, and that the petition could not be maintained, because they contemplated the taking of his property for private use, in violation of the Fourteenth Amendment of the Constitution of the United States, which declares that no State shall deprive any person f property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws; as well as in violation of the Constitution of the State, the Bill of Rights of which declares that all men have certain natural, essential and inherent rights, among which are the acquiring, possessing and protecting property, and that every member of the community has a right to be protected in the enjoyment of his property.

His objections were overruled by the highest court of New Hampshire; and final judgment was entered, adjudging that the facts alleged in the petition were true, and that, upon payment or tender of the damages assessed by the verdict, with interest, and fifty per cent. added, making in all the sum of $572.43, the company have the right to erect and maintain the dam, and to flow his land forever to the depth and extent to which it might or could be flowed or injured thereby. 56 N. H. 386; 59 N. H. 332, 563.

*Mr. C. R. Morrison* for plaintiff in error.—The Fourteenth Amendment exempts private property from taking for other than public uses. This term is used in its proper sense. *Par-*

kersburg v. *Brown*, 106 U. S. 487; *Ex parte Virginia*, 100 U. S. 339; *Olcott* v. *Supervisors*, 16 Wall. 678. Whether a use is public or private is a question of general law, not of constitutional construction; and hence the decision of the State court on that point in this case is entitled only to the weight of other equally respectable courts. *Hagar* v. *Reclamation District*, 111 U. S. 701, 704; *Louisville & Nashville Railroad* v. *Palmes*, 109 U. S. 244; *Lavin* v. *Emigrant Savings Bank*, 18 Blatchford, 1, 13; *Butz* v. *Muscatine*, 8 Wall. 575. There has been in New Hampshire but one decision of this questi.. on the merits, that in *Great Falls Co.* v. *Fernald*, 47 N. H. 444. This opinion is entitled to less weight than is ordinarily given to New Hampshire decisions, because it was a friendly suit without a vigorous defence; it rests on no historical basis; it is inconsistent with the decisions of the same judge in *Mount Washington Road Company Case*, 35 N. H. 134, and with the well considered case of *Concord Railroad* v. *Greeley*, 17 N. H. 47, 56; and, though since followed, doubts have been expressed as to its correctness. So, too, courts in other States, while sustaining similar statutes, have expressed doubts of their validity if the question were open. *Miller* v. *Troost*, 14 Minn. 365, 367, 369; *Jordan* v. *Woodward*, 40 Maine, 317, 324; *Fisher* v. *Horicon Manufacturing Co.*, 10 Wisc. 351, 353; *Harding* v. *Funk*, 8 Kansas, 315, 323. In Massachusetts it is denied that there is any taking; and it is said to be a regulation of water rights. *Lowell* v. *Boston*, 111 Mass. 454; *Murdoch* v. *Stickney*, 8 Cush. 113; *Fisher* v. *Framingham Manufacturing Co.*, 12 Pick. 68. But this idea is repudiated in New Hampshire and other States, and in this court. *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *Eaton* v. *Railroad*, 51 N. H. 504; *Winn* v. *Rutland*, 52 Vt. 481, 494; *Inman* v. *Tripp*, 11 R. I. 520; *Nevins* v. *Peoria*, 41 Ill. 502; *Pettigrew* v. *Evansville*, 25 Wisc. 223; *O'Brien* v. *St. Paul*, 18 Minn. 176; *Columbus* v. *Woolen Mills*, 33 Ind. 435; *Rapids Booming Co.* v. *Jarvis*, 30 Mich. 308, 321; *Lee* v. *Pembroke Iron Co.*, 57 Maine, 481; *Broadwell* v. *Kansas*, 75 Missouri, 213, 218. The common-law right of a riparian owner is, that the level of the water at his boundary shall not be changed.

A lower riparian proprietor, by taking his land as a part of his reservoir, appropriates property which may have a value far beyond its value as land. This cannot be done, without buying it. *McCoy* v. *Danley*, 20 Penn. St. 85; Gould on Waters, § 210. The police power of a State to restrict the uses to which one may put his own property, is quite a different thing from the attempted grant of a right to appropriate the property of another. *Munn* v. *Illinois*, 94 U. S. 113; *Davidson* v. *New Orleans*, 96 U. S. 97, 107; *Beer Company* v. *Massachusetts*, 97 U. S. 25, 32, 33; *Water Works Co.* v. *St. Tammany Co.*, 4 Woods, 134; *Escanaba Co.* v. *Chicago*, 107 U. S. 679, 683. The police power proper may be exercised without compensation. Eminent domain must be with compensation, and for public uses only, although the occasion for its exercise may be necessary regulations for health, morals, and good order in the community. The public has a right to pure air as much as to pure water, and hence there doubtless may be a taking to prevent or remove nuisances, as by draining swamps. *Hagar* v. *Reclamation District*, 111 U. S. 701. Private roads, so called, have in general been sustained, or condemned, according as courts have or have not found that the public have a right to use them, even if not compelled to repair them. *Underwood* v. *Bailey*, 59 N. H. 480; *Proctor* v. *Andover*, 42 N. H. 348, 360. Whatever is a public use for the exercise of eminent domain, is a public use for the exercise of the taxing power. *Renwick* v. *Davenport Railroad*, 47 Iowa, 511; *Bennington* v. *Park*, 50 Vermont, 178; *Talbot* v. *Hudson*, 16 Gray, 417; *Commercial Bank* v. *Iola*, 2 Dillon, 353, 363. This rule that the taking must be for the use of the public, and not permissive, but of right, has been recognized in many other cases, and is the only one which will bear examination. Nothing short of it is a taking for public use. *Bridge Co.* v. *Bridge Co.*, 17 Conn. 40, 64; *Bloodgood* v. *Railroad*, 18 Wend. 9, 15; *Burlington* v. *Beasley*, 94 U. S. 310; Mills Eminent Domain, § 287. Any other principle would afford no protection, as all agree that the judiciary cannot question the propriety of taking except as involved in the question whether it is for public use. The New Hampshire statute does not require a finding that the

taking will be of public use, but only that it may be. Similar mill acts have been declared void in Alabama, Georgia, Michigan, New York, Tennessee and Vermont, besides being questioned in other States. *Moore* v. *Wright*, 34 Ala. 311; *Loughbridge* v. *Harris*, 42 Georgia, 500; *Ryerson* v. *Brown*, 35 Mich. 333; *Hay* v. *Cohoes Co.*, 3 Barb. 42; *Harding* v. *Goodlett*, 3 Yerger, 41; *Tyler* v. *Beacher*, 44 Vermont, 648. So even at the time of the decision in *Company* v. *Fernald*, the weight of authority was against its correctness; and the preponderance has greatly increased since. And, finally, it is now settled law in this court of last resort, as well as elsewhere, that a legislature cannot authorize taxes in aid of manufacturing corporations; and a use that is not a public use for the imposition of taxes, is not a public use for the appropriation of property under the right of eminent domain. The very ground upon which the power to tax in aid of manufacturing corporations is denied, is that it is taking a part of the property of the citizen for the private use and benefit of another. How then can the legislature take a much larger part, for the same use, against the will of the owner? *Allen* v. *Jay*, 60 Maine, 124; *Cole* v. *La Grange*, 19 Fed. Rep. 871; *English* v. *People*, 96 Ill. 566; *Loan Association* v. *Topeka*, 20 Wall. 655; *Parkersburg* v. *Brown*, cited above; *Weismer* v. *Douglass*, 64 N. Y. 91.

*Mr. George F. Hoar* and *Mr. B. Wadleigh* for defendant in error.

Mr. Justice GRAY delivered the opinion of the court. He recited the facts as above stated, and continued:

The position that the plaintiff in error has been denied the equal protection of the laws was not insisted upon at the argument. The single question presented for decision is whether he has been deprived of his property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States. It is only as bearing upon that question. that this court, upon a writ of error to a State court,

has jurisdiction to consider whether the statute conforms to the Constitution of the State.

The charter of the Amoskeag Manufacturing Company, which authorized it to erect and maintain its mills and dam, gave it no right to flow the lands of others. *Eastman* v. *Amoskeag Manufacturing Co.*, 44 N. H. 143. The proceedings in the State court were had under the general mill act of New Hampshire, which enacts that any person, or any corporation authorized by its charter so to do, may erect or maintain on his or its own land a water mill and mill-dam upon any stream not navigable, paying to the owners of lands flowed the damages which, upon a petition filed in court by either party, may be assessed, by a committee or by a jury, for the flowing of the lands to the depth and extent to which they may or can be flowed by the dam. N. H. Stat. 1868, ch. 20.

The plaintiff in error contends that his property has been taken by the State of New Hampshire for private use, and that any taking of private property for private use is without due process of law.

The defendant in error contends that the raising of a water power upon a running stream for manufacturing purposes is a public use ; that the statute is a constitutional regulation of the rights of riparian owners ; and that the remedy given by the statute is due process of law.

General mill acts exist in a great majority of the States of the Union. Such acts, authorizing lands to be taken or flowed *in invitum*, for the erection and maintenance of mills, existed in Virginia, Maryland, Delaware and North Carolina, as well as in Massachusetts, New Hampshire and Rhode Island, before the Declaration of Independence ; and exist at this day in each of these States, except Maryland, where they were repealed in 1832. One passed in North Carolina in 1777 has remained upon the statute book of Tennessee. They were enacted in Maine, Kentucky, Missouri and Arkansas, soon after their admission into the Union. They were passed in Indiana, Illinois, Michigan, Wisconsin, Iowa, Nebraska, Minnesota, Mississippi, Alabama and Florida, while they were yet Territories, and re-enacted after they became States. They were also enacted

in Pennsylvania in 1803, in Connecticut in 1864, and more recently in Vermont, Kansas, Oregon, West Virginia and Georgia, but were afterwards repealed in Georgia. The principal statutes of the several States are collected in the margin.*

---

* For convenience of reference, the names of the States are arranged in alphabetical order. The Territorial Acts of Indiana and Illinois not being in the Library of Congress, the citations of those acts are taken from Gould on Waters, § 616, and notes.

ALABAMA. Terr. Stats. 1811, 1812, Toulmin's Dig. 1823, tit. 45; Clay's Dig. 1843, p. 376; Code 1852, §§ 2089–2115; Rev. Code 1867, §§ 2481–2508; Code 1876, §§ 3555–3579.

ARKANSAS. Rev. Stat. 1837, ch. 98; Dig. 1846, ch. 107; Dig. 1858, ch. 114; Gantt's Dig. 1873, ch. 95.

CONNECTICUT. Stat. 1864, ch. 26; Gen. Stat. 1866, tit. 1, ch. 16; Gen. Stat. 1875, tit. 19, ch. 17, pt. 6.

DELAWARE. Prov. Stats. 1719, 1760, 1773, 1 Laws 1700–97, p. 535, appx. pp. 53, 72; Rev. Stat. 1852, ch. 61; Stat. 1859, ch. 538; Rev. Code 1874, ch. 61.

FLORIDA. Terr. Stats. 1827, 1829, Duval's Compilation, pp. 51–55; Thompson's Dig. 1847, ch. 10; McClellan's Dig. 1881, ch. 152.

GEORGIA. Stat. 1869, ch 98. Repealed by Code of 1882, § 3018.

ILLINOIS. 2 Terr. Laws 1815, p. 456; Stat. 1819, p. 265; Rev. Code 1827, p. 297; Rev. Stat. 1845, ch. 71; Rev. Stat. 1869, ch. 71; Rev. Stat. 1874, ch. 92; Rev. Stat. 1880, ch. 92.

INDIANA. Terr. Stat. 1807, p. 194; Rev. Laws 1824, ch. 117; Rev. Laws 1831, chap. 1; Rev. Stat. 1838, ch. 1; Rev. Stat. 1842, ch. 48, art. 5; Rev. Stat. 1852, pt. 2, art. 41; Rev. Stat. 1881, §§ 882 *& seq.*

IOWA. Terr. Stats. 1839, p. 343, 1843, p. 437; Stat. 1855, ch. 92; Rev. Stat. 1860, tit. 11, ch. 54, art. 4; Code 1873, tit. 10, ch. 1; Code 1880, tit. 10, ch. 1.

KANSAS. Stat. 1867, ch. 87; Gen. Stat. 1868, ch. 66; Comp. Laws 1879, ch. 66.

KENTUCKY. Stat. February 22, 1797, 1 Littell Stat. 606; 2 Littell & Swigert's Dig. 1822, p. 933; Rev. Stat. 1852, ch. 67; Gen. Stat. 1883, ch. 77.

MAINE. Stat. 1821, ch. 45; Rev. Stat. 1840, ch. 126; Rev. Stat. 1857, ch. 92; Rev. Stat. 1871, ch. 93; Rev. Stat. 1883, ch. 92.

MARYLAND. Prov. Stat. 1719, ch. 15; Bacon's Laws 1765, and 1 Kilty's Laws. Repealed by Stat. 1832, ch. 56.

MASSACHUSETTS. Prov. Stat. 1714, ch. 15, 1 Prov. Laws (State ed.) 729, and Anc. Chart. 404; Stats. 1795, ch. 74, passed February 27, 1796; 1824, ch. 153, February 26, 1825; 1825, ch. 109, February 28, 1826; 1829, ch. 122, March 12, 1830; Rev. Stat. 1836, ch. 116; Gen. Stat. 1860, ch. 149; Pub. Stat. 1882, ch. 190.

MICHIGAN. Terr. Stats. 1824, 1828, 2 Terr. Laws, 192, 699; Stat. 1865, ch. 304; Comp. Laws 1872, ch. 221; Stat. 1873, ch. 196.

MINNESOTA. Terr. Stat. 1857, Pub. Stat. 1849–58, ch. 129; Rev. Stat. 1866, ch. 31; Gen. Stat. 1878, ch. 31.

Opinion of the Court.

In most of those States, their validity has been assumed, without dispute; and they were never adjudged to be invalid anywhere until since 1870, and then in three States only, and for incompatibility with their respective Constitutions. *Lough-bridge* v. *Harris* (1871), 42 Georgia, 500; *Tyler* v. *Beacher* (1871), 44 Vermont, 648; *Ryerson* v. *Brown* (1877), 35 Michigan, 333. The earlier cases in Tennessee, Alabama and New York, containing dicta to the same effect, were decided upon other grounds. *Harding* v. *Goodlett*, 3 Yerger, 40; *Memphis Railroad* v. *Memphis*, 4 Coldwell, 406; *Moore* v. *Wright*, 34 Alabama, 311, 333; *Bottoms* v. *Brewer*, 54 Alabama, 288; *Hay* v. *Cohoes Co.*, 3 Barb. 42, 47, and 2 N. Y. 159.

The principal objects, no doubt, of the earlier acts were grist mills; and it has been generally admitted, even by those courts

MISSISSIPPI. Terr. Stat. 1811, 1812, p. 344; Rev. Code 1824, ch. 65; Rev. Code 1871, ch. 34; Rev. Code 1880, ch. 27.

MISSOURI. Stat. 1823; 2 Rev. Stat. 1825, p. 587; Rev. Stat. 1835, p. 405; Rev. Stat. 1845, ch. 121; Rev. Stat. 1855, ch. 112; Gen. Stat. 1865, ch. 101; Wagner's Stat. 1872, ch. 98; Rev. Stat. 1879, ch. 132.

NEBRASKA. Terr. Stat. 1861–62, p. 71; Rev. Stat. 1866, ch. 36; Gen. Stat. 1873, ch. 44; Comp. Stat. 1881, ch. 57.

NEW HAMPSHIRE. Prov. Stat. 1718, Prov. Laws (ed. 1771), ch. 60; Stat. 1868, ch. 20; Gen. Laws 1878, ch. 190.

NORTH CAROLINA. Prov. Stat. 1758, ch. 5, Revision, 1773, p. 219; Stat. 1777, ch. 23, Laws 1791, p. 343; Stats. 1809, ch. 15; 1813, ch. 19; Rev. Laws 1821, ch. 122, 773, 863; Rev. Stat. 1837, ch. 74; Rev. Code 1854, ch. 71; Battle's Revisal 1873, ch. 72.

OREGON. Stat. December 19, 1865, Gen. Laws 1843–72, p. 679.

PENNSYLVANIA. Stat. March 23, 1803, 4 Smith's Laws, p. 20; Purdon's Dig. (10th ed.), p. 1065.

RHODE ISLAND. Col. Stat. 1734, Laws 1744, p. 180; Public Laws 1798, p. 504; Rev. Stat. 1857, ch. 88; Pub. Stat. 1882, ch. 104.

TENNESSEE. Rev. Laws 1809, ch. 23; Compilation 1836, p. 486; Code 1858, §§ 1908–1915; Code 1884, §§ 2651–2661.

VERMONT. Stats. 1866, ch. 12; 1867, ch. 27; 1869, ch. 27; Gen. Stat. 1870, appx. pp. 906, 953, 1025; Rev. Laws 1880, ch. 148, §§ 3215–3224.

VIRGINIA. Col. Stat. 1667, ch. 4, 2 Henning's Stat. 260; Col. Stat. 1705, ch. 41, 3 Henning, 401; Col. Stat. 1745, ch. 11, 5 Henning, 359; Stat. 1785, ch. 82, 12 Henning, 187; Rev. Code, 1814, ch. 105; Rev. Code 1819, ch. 235; Code 1849, ch. 63; Code 1873, ch. 63.

WEST VIRGINIA. Code 1870, ch. 44, §§ 29–36.

WISCONSIN. Terr. Stat. 1840, ch. 48; Rev. Stat. 1858, ch. 56; Rev. Stat. 1878, ch. 146.

which have entertained the most restricted view of the legislative power, that a grist mill which grinds for all comers, at tolls fixed by law, is for a public use. See also *Blair* v. *Cuming County*, 111 U. S. 363.

But the statutes of many States are not so limited, either in terms, or in the usage under them. In Massachusetts, for more than half a century, the mill acts have been extended to mills for any manufacturing purpose. Mass. Stat. 1824, ch. 153; *Wolcott Woollen Manufacturing Co.* v. *Upham,* 5 Pick. 292; *Palmer Co.* v. *Ferrill,* 17 Pick. 58, 65. And throughout New England, as well as in Pennsylvania, Virginia, North Carolina, Kentucky, and many of the Western States, the statutes are equally comprehensive.

It has been held in many cases of high authority, that special acts of incorporation, granted by the legislature for the establishment of dams to increase and improve the water power of rivers and navigable waters, for mechanical and manufacturing purposes, are for a public use. *Scudder* v. *Trenton Delaware Falls Co.,* Saxton, 694, 728, 729; *Boston & Roxbury Mill Corporation* v. *Newman,* 12 Pick. 467; *Hazen* v. *Essex Co.,* 12 Cush. 475; *Commonwealth* v. *Essex Co.,* 13 Gray, 239, 251, 252; *Hankins* v. *Lawrence,* 8 Blackford, 266; *Great Falls Manufacturing Co.* v. *Fernald,* 47 N. H. 444.

In some of those cases, the authority conferred by general mill acts upon any owner of land upon a stream to erect and maintain a mill on his own land and to flow the land of others, for manufacturing purposes, has been considered as resting on the right of eminent domain, by reason of the advantages inuring to the public from the improvement of water power and the promotion of manufactures. See also *Holyoke Co.* v. *Lyman,* 15 Wall. 500, 506, 507; *Beekman* v. *Saratoga & Schenectady Railroad,* 3 Paige, 45, 73; *Talbot* v. *Hudson,* 16 Gray, 417, 426. And the validity of general mill acts, when directly controverted, has often been upheld upon that ground, confirmed by long usage or prior decisions. *Jordan* v. *Woodward,* 40 Maine, 317; *Olmstead* v. *Camp,* 33 Conn. 532; *Todd* v. *Austin,* 34 Conn. 78; *Venard* v. *Cross,* 8 Kansas, 248; *Harding* v. *Funk,* 8 Kansas, 315; *Miller* v. *Troost,* 14 Minnesota,

282; *Newcomb* v. *Smith*, 1 Chandler, 71 ; *Fisher* v. *Horicon Co.*, 10 Wisconsin, 351 ; *Babb* v. *Mackey*, 10· Wisconsin, 314·; *Burnham* v. *Thompson*, 35 Iowa, 421.

In New Hampshire, from which the present case comes, the legislature of the Province in 1718 passed an act (for the most part copied from the Massachusetts act of 1714), authorizing the owners of mills to flow lands of others, paying damages assessed by a jury. The act of 1718 continued in force until the adoption of the first Constitution of the State in 1784, and afterwards until June 20, 1792, and was then repealed, upon a general revision of the statutes, shortly before the State Constitution of 1792 took effect. The provisions of the Bill of Rights, on which the plaintiff in error relied in the court below, were exactly alike in the two Constitutions. Special acts authorizing the flowing of lands upon the payment of damages were passed afterwards from time to time ; among others, the statute of July 8, 1862, authorizing the Great Falls Manufacturing Company to erect a dam upon Salmon Falls River, which was adjudged by the Supreme Judicial Court of New Hampshire in 1867, in an opinion delivered by Chief Justice Perley, to be consistent with the Constitution of that State, because the taking authorized was for a public use. *Great Falls Manufacturing Co.* v. *Fernald*, 47 N. H. 444. The statute now in question, the first general mill act passed by the legislature of the State, was passed and took effect on July 3, 1868; was held in *Ash* v. *Cummings*, 50 N. H. 591, after elaborate argument against it, to be constitutional, upon the ground of the decision in *Great Falls Manufacturing Co.* v. *Fernald* ; and was enforced without question in *Portland* v. *Morse*, 51 N. H. 188, and in *Town* v. *Faulkner*, 56 N. H. 255. In the case at bar, and in another case since, the State court held its constitutionality to be settled by the former decisions. *Amoskeag Manufacturing Co.* v. *Head*, 56 N. H. 386, and 59 N. H. 332, 563 ; *Same* v. *Worcester*, 60 N. H. 522.

The question whether the erection and maintenance of mills for manufacturing purposes under a general mill act, of which any owner of land upon a stream not navigable may avail him-

self at will, can be upheld as a taking, by delegation of the right of eminent domain, of private property for public use, in the constitutional sense, is so important and far reaching, that it does not become this court to express an opinion upon it, when not required for the determination of the rights of the parties before it. We prefer to rest the decision of this case upon the ground that such a statute, considered as regulating the manner in which the rights of proprietors of lands adjacent to a stream may be asserted and enjoyed, with a due regard to the interests of all, and to the public good, is within the constitutional power of the legislature.

When property, in which several persons have a common interest, cannot be fully and beneficially enjoyed in its existing condition, the law often provides a way in which they may compel one another to submit to measures necessary to secure its beneficial enjoyment, making equitable compensation to any whose control of or interest in the property is thereby modified.

In the familiar case of land held by several tenants in common, or even by joint tenants with right of survivorship, any one of them may compel a partition, upon which the court, if the land cannot be equally divided, will order owelty to be paid, or, in many States, under statutes the constitutionality of which has never been denied, will, if the estate is such that it cannot be divided, either set it off to one and order him to compensate the others in money, or else order the whole estate to be sold. *King* v. *Reed*, 11 Gray, 490; *Bentley* v. *Long Dock Co.*, 1 McCarter, 480; *S. C.* on appeal, *nom. Manners* v. *Bentley*, 2 McCarter, 501; *Mead* v. *Mitchell*, 17 N. Y. 210; *Richardson* v. *Monson*, 23 Conn. 94. Water rights held in common, incapable of partition at law, may be the subject of partition in equity, either by apportioning the time and extent of use, or by a sale of the right and a division of the proceeds. *Smith* v. *Smith*, 10 Paige, 470; *De Witt* v. *Harvey*, 4 Gray, 486; *McGillivray* v. *Evans*, 27 California, 92.

At the common law, as Lord Coke tells us, "If two tenants in common, or joint tenants, be of an house or mill, and it fall in decay, and the one is willing to repair the same, and the

other will not, he that is willing shall have a writ *de repara-
tione facienda ;* and the writ 'saith, *ad reparationem et susten-
tationem ejusdem domus teneantur ;* whereby it appeareth that
owners are in that case bound *pro bono publico* to maintain
houses and mills which are for habitation and use of men."
Co. Lit. 200 *b*; 4 Kent Com. 370.   In the same spirit, the stat-
utes of Massachusetts, for a hundred and seventy-five years,
have provided that any tenant in common of a mill in need of
repair may notify a general meeting of all the owners for con-
sultation, and that, if any one refuses to attend, or to agree
with the majority, or to pay his share, the majority may cause
the repairs to be made, and recover his share of the expenses
out of the mill or its profits or earnings.   Mass. Prov. Stat.
1709, ch. 3, 1 Prov. Laws (State ed.) 641, and Anc. Chart. 388;
Stat. 1795, ch. 74, §§ 5–7; Rev. Stat. 1836, ch. 116, §§ 44–58;
Gen. Stat. 1860, ch. 149, §§ 53–64; Pub. Stat. 1882, ch. 190,
§§ 59–70.   And the statutes of New Hampshire, for more than
eighty years, have made provision for compelling the repair of
mills in such cases.   *Roberts* v. *Peavey*, 7 Foster, 477, 493.

The statutes which have long existed in many States, au-
thorizing the majority of the owners in severalty of adjacent
meadow or swamp lands to have commissioners appointed to
drain and improve the whole tract, by cutting ditches or other-
wise, and to assess and levy the amount of the expense upon
all the proprietors in proportion to the benefits received, have
been often upheld, independently of any effect upon the pub-
lic health, as reasonable regulations for the general advantage
of those who are treated for this purpose as owners of a com-
mon property.   *Coomes* v. *Burt*, 22 Pick. 422; *Wright* v. *Bos-
ton*, 9 Cush. 233, 241; *Sherman* v. *Tobey*, 3 Allen, 7; *Lowell* v.
*Boston*, 111 Mass. 454, 469; *French* v. *Kirkland*, 1 Paige, 117;
*People* v. *Brooklyn*, 4 N. Y. 419, 438; *Coster* v. *Tide Water
Co.*, 3 C. E. Green, 54, 68, 518, 531; *O'Reiley* v. *Kankakee
Valley Draining Co.*, 32 Indiana, 169.

By the maritime law, based, as Lord Tenterden observed, on
the consideration that the actual employment of ships is " a
matter, not merely of private advantage to the owners, but of
public benefit to the State," and recognized in the decisions

and the rules of this court, courts of admiralty, when the part-. owners of a ship cannot agree upon her employment, authorize the majority to send her to sea, on giving security to the dissenting minority, to bring back and restore the ship, or, if she be lost, to pay them the value of their shares; and in such case the minority can neither recover part of the profits of the voyage nor compensation for the use of the ship. Abbott on Shipping, pt. 1, ch. 3, §§ 2, 3; *The Steamboat Orleans*, 11 Pet. 175, 183; Rule 20 in Admiralty, 3 How. vii.; *The Marengo*, 1 Lowell, 52. If the part-owners are equally divided in opinion upon the manner of employing the ship, then, according to the general maritime law, recognized and applied by Mr. Justice Washington, the ship may be ordered to be sold and the proceeds distributed among them. *The Seneca*, 18 Am. Jur. 485; *S. C.* 3 Wall. Jr. 395. See also Story on Partnership, § 439; *The Nelly Schneider*, 3 P. D. 152.

But none of the cases, thus put by way of illustration, so strongly call for the interposition of the law as the case before us.

The right to the use of running water is *publici juris*, and common to all the proprietors of the bed and banks of the stream from its source to its outlet. Each has a right to the reasonable use of the water as it flows past his land, not interfering with a like reasonable use by those above or below him. One reasonable use of the water is the use of the power, inherent in the fall of the stream and the force of the current, to drive mills. That power cannot be used without damming up the water, and thereby causing it to flow back. If the water thus dammed up by one riparian proprietor spread over the lands of others, they could at common law bring successive actions against him for the injury so done them, or even have the dam abated. Before the mill acts, therefore, it was often impossible for a riparian proprietor to use the water power at all, without the consent of those above him. The purpose of these statutes is to enable any riparian proprietor to erect a mill and use the water power of the stream, provided he does not interfere with an earlier exercise by another of a like right or with any right of the public; and to substitute, for the common-law remedies

of repeated actions for damages and prostration of the dam, a new form of remedy, by which any one whose land is flowed can have assessed, once for all, either in a gross sum or by way of annual damages, adequate compensation for the injury.

This view of the principle upon which general mill acts rest has been fully and clearly expounded in the judgments delivered by Chief Justice Shaw in the Supreme Judicial Court of Massachusetts.

In delivering the opinion of the court in a case decided in 1832, he said : " The statute of 1796 is but a revision of a former law, and the origin of these regulations is to be found in the provincial statute of 1714. They are somewhat at variance with that absolute right of dominion and enjoyment which every proprietor is supposed by law to have in his own soil; and in ascertaining their extent it will be useful to inquire into the principle upon which they are founded. We think they will be found to rest for their justification, partly upon the interest which the community at large has in the use and employment of mills, and partly upon the nature of the property, which is often so situated that it could not be beneficially used without the aid of this power. A stream of water often runs through the lands of several proprietors. One may have a sufficient mill-site on his own land, with ample space on his own land for a mill-pond or reservoir, but yet, from the operation of the well-known physical law that fluids will seek and find a level, he cannot use his own property without flowing the water back more or less on the lands of some other proprietor. We think the power given by statute was intended to apply to such cases, and that the legislature meant to provide that, as the public interest in such case coincides with that of the mill-owner, and as the mill-owner and the owner of lands to be flowed cannot both enjoy their full rights, without some interference, the latter shall yield to the former, so far that the former may keep up his mill and head of water, notwithstanding the damage done to the latter, upon payment of an equitable compensation for the real damage sustained, to be ascertained in the mode provided by the statute." " From this view of the object and purpose of the statute, we think it quite mani-

fest that it was designed to provide for the most useful and beneficial occupation and enjoyment of natural streams and watercourses, where the absolute right of each proprietor to use his own land and water privileges, at his own pleasure, cannot be fully enjoyed, and one must of necessity, in some degree, yield to the other." *Fiske* v. *Framingham Manufacturing Co.*, 12 Pick. 68, 70–72.

In another case, decided almost twenty years later, he said: "The relative rights of land-owners and mill-owners are founded on the established rule of the common law, that every proprietor, through whose territory a current of water flows, in its course towards the sea, has an equal right to the use of it, for all reasonable and beneficial purposes, including the power of such stream for driving mills, subject to a like reasonable and beneficial use, by the proprietors above him and below him, on the same stream. Consequently, no one can deprive another of his equal right and beneficial use, by corrupting the stream, by wholly diverting it, or stopping it from the proprietor below him, or raise it artificially, so as to cause it to flow back on the land of the proprietor above. This rule, in this Commonwealth, is slightly modified by the mill acts, by the well-known provision, that when a proprietor erects a dam on his own land, and the effect is, by the necessary operation of natural laws, that the water sets back upon some land of the proprietor above, a consequence which he may not propose as a distinct purpose, but cannot prevent, he shall not thereby be regarded as committing a tort, and obliged to prostrate his dam, but may keep up his dam, paying annual or gross damages, the equitable assessment of which is provided for by the acts. It is not a right to take and use the land of the proprietor above, against his will, but it is an authority to use his own land and water privilege to his own advantage and for the benefit of the community. It is a provision by law, for regulating the rights of proprietors, on one and the same stream, from its rise to its outlet, in a manner best calculated, on the whole, to promote and secure their common rights in it." *Bates* v. *Weymouth Iron Co.*, 8 Cush. 548, 552, 553.

Other opinions of Chief Justice Shaw illustrate the same view.

*Williams* v. *Nelson*, 23 Pick. 141, 143; *French* v. *Braintree Manufacturing Co.*, 23 Pick. 216, 218–221; *Cary* v. *Daniels*, 8 Met. 466, 476, 477; *Murdock* v. *Stickney*, 8 Cush. 113, 116; *Gould* v. *Boston Duck Co.*, 13 Gray, 442, 450. It finds more or less distinct expression in other authorities. *Lowell* v. *Boston*, 111 Mass. 464–466; *United States* v. *Ames*, 1 Woodb. & Min. 76, 88; *Waddy* v. *Johnson*, 5 Iredell, 333, 339; *Jones* v. *Skinner*, 61 Maine, 25, 28; *Olmstead* v. *Camp*, 33 Conn. 547, 550; Chief Justice Redfield, in 12 Am. Law Reg. (N. S.) 498–500. And no case has been cited in which it has been considered and rejected.

Upon principle and authority, therefore, independently of any weight due to the opinions of the courts of New Hampshire and other States, maintaining the validity of general mill acts as taking private property for public use, in the strict constitutional meaning of that phrase, the statute under which the Amoskeag Manufacturing Company has flowed the land in question is clearly valid as a just and reasonable exercise of the power of the legislature, having regard to the public good, in a more general sense, as well as to the rights of the riparian proprietors, to regulate the use of the water power of running streams, which without some such regulation could not be beneficially used. The statute does not authorize new mills to be erected to the detriment of existing mills and mill privileges. And by providing for an assessment of full compensation to the owners of lands flowed, it avoids the difficulty which arose in the case of *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166.

Being a constitutional exercise of legislative power, and providing a suitable remedy, by trial in the regular course of justice, to recover compensation for the injury to the land of the plaintiff in error, it has not deprived him of his property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States. *Walker* v. *Sauvinet*, 92 U. S. 90; *Davidson* v. *New Orleans*, 96 U. S. 97; *Hurtado* v. *California*, 110 U. S. 516; *Hagar* v. *Reclamation District*, 111 U. S. 701.          *Judgment affirmed.*

MR. JUSTICE BLATCHFORD did not sit in this case, or take any part in its decision.