Merrimack, }
Nov. 6, 1912. }

### SWAIN *v.* PEMIGEWASSET POWER CO.

At common law, a riparian owner is entitled to a reasonable usufruct of the water of a stream passing through or adjacent to his premises, or of the power it is capable of developing in consequence of the natural configuration of the bed of the stream upon or opposite his land, and may maintain an action against a lower proprietor for the fair rental value of power appropriated by a wrongful flowing back of the water.

The injuries to "land" for which damages may be assessed under the flowage act are not merely such as render the soil less capable of cultivation or physical occupation, but include all infringements upon the rights incidental and appurtenant to the full exercise of landed proprietorship.

Upon a petition for the assessment of damages under the flowage act, a riparian owner may recover compensation for the impairment of undeveloped and unutilized water-power located upon his land, which results from a flowing back of the stream by a lower proprietor.

The provision of the flowage act which gives to the owner of an existing mill a preferential right in the power of the stream upon which his establishment is located, on the ground of prior appropriation, does not relieve him of the obligation to indemnify another riparian proprietor for damages caused by a flowing back of the water.

The measure of damages for a taking of undeveloped water-power by flowing back the water of the stream is the difference in the value of the plaintiff's land before the flowage and after.

PETITION, for the assessment of damages under the flowage act. The question raised by the demurrer is whether the plaintiff may recover damages for the flowing out or taking of the head or falls of the stream located upon her land, but which she has neither utilized nor developed. Transferred without a ruling from the October term, 1911, of the superior court by *Pike*, J.

*George W. Stone* and *Martin & Howe* (*Mr. Howe* orally), for the plaintiff.

*Niles & Upton* and *Remick & Jackson* (*Mr. Upton* orally), for the defendant.

WALKER, J. The rights of riparian owners at common law to a beneficial use of the water of the river or stream, passing through or adjacent to their lands, are not open to serious doubt. They are entitled to a reasonable usufruct of the water, or of the power it is capable of developing in consequence of the natural configuration of the bed of the stream opposite their respective lands. If at that place there is such a fall in the flow of the stream that it is capable of being utilized for the development of mechanical power by the erection of a dam and the usual appliances used in connection therewith, the riparian owner has a valuable interest in that natural condition of the stream, which is incident to his ownership of the land, extending ordinarily to the thread of the stream. In the absence of the mill act, the doctrine of the recent case of *Electric Light Co. v. Jones*, 75 N. H. 172, would seem to establish the proposition that he would be entitled to maintain an action for damages caused by the defendant's wrongful appropriation of his water-power. In that case it was held that a mill-owner who wrongfully flows back the water of a stream, and thereby obtains the use of power to which a proprietor above him is entitled, is liable to the latter for the fair rental value of the power so taken

and used, although the latter was not using the power opposite his land and had no intention of doing so. The capacity of the land, in connection with a reasonable use of the water flowing over it, to generate power upon his premises was deemed to constitute a valuable right, which he could not be wrongfully deprived of without suffering substantial damage, for the recovery of which an action would lie against the wrongdoer. That this conclusion is a sound one is evident both upon principle and authority. *Cowles* v. *Kidder*, 24 N. H. 364; *Wilder* v. *Clough*, 55 N. H. 359; *Concord Mfg. Co.* v. *Robertson*, 66 N. H. 1, 19; *Winnipiseogee etc. Co.* v. *Gilford*, 67 N. H. 514; *State* v. *Company*, ante, 373, 376.

As at common law the defendant would be liable for the damages caused by its setting back the water of the river and retarding its flow over the plaintiff's land, the question arises whether the statute known as the flowage act, originally passed in 1868 (Laws 1868, c. 20; P. S., c. 142, ss. 12–17), has rendered such loss *damnum absque injuria*, when the act of retarding the flow of the water is no longer wrongful, but authorized by the statute for the promotion of manufacturing establishments. It is unnecessary to say that this is a question of legislative intention. Does the language of the act, legally interpreted, justify or require such a conclusion?

Section 12, chapter 142, Public Statutes, provides that "any person or corporation authorized by its charter so to do may erect and maintain on his or its land, or upon land of another with his consent, a water-mill, and a dam to raise the water for working it, or for creating a reservoir of water, and for equalizing the flow of the same, to its use, and to the use of the mills below, upon and across any stream not navigable, upon the terms and conditions, and subject to the regulations, hereinafter expressed." Section 13 is as follows: "If the land of any person shall be overflowed, drained, or otherwise injured by the use of such dam, and the damage or injury shall not, within thirty days after due notice thereof, be satisfactorily adjusted by the party erecting or maintaining the dam, either party may apply by petition to the supreme [superior] court . . . to have the damage that may have been or may be done thereby assessed." It is conceded that the defendant caused the water of the river to flow back in the exercise of the power conferred by section 12, and that the damages it is compelled to pay the plaintiff therefor, if any, are those contemplated in section 13. *Dolbeer* v. *Company*, 72 N. H. 562, 563. If the plaintiff's "land" has been "injured by the use" of the de-

fendant's dam, the defendant's demurrer should be overruled and the damages should be assessed.

If it is assumed that the damages provided for in the statute are confined to injuries to "the land," there is no purpose apparent in the statute to still further limit them to injuries which render the land less capable of cultivation or of physical occupation. "Land" is not used in a narrow or specially restrictive sense in the statute. It applies not merely to land as distinguished from water, but to land with all that is incidentally appurtenant to the full exercise of ownership. If the land is adapted by nature to some special or peculiar use, ownership of the land includes the right to devote it to that use. The damages the legislature had in mind were such as result from depriving the landowner of the ability to use his land to the best advantage in view of its location and natural adaptability. The plaintiff's right of landed ownership was as much infringed and appropriated by the defendant, who deprived her of the use of the water of the river, as it would have been if the water had overflowed her field or garden, or had flooded her dwelling-house; and the damage in the decreased value of her land might be much greater. Damage or injury to land, in a legal as well as in a practical sense, means an infringement of the owner's right to the use and possession of it. "If the right of indefinite user is an essential element of absolute property or complete ownership, whatever physical interference annuls this right takes 'property'—although the owner may still have left to him valuable rights (in the article) of a more limited and circumscribed nature. He has not the same property .that he formerly had. Then he had an unlimited right; now he has only a limited right. His absolute ownership has been reduced to a qualified ownership. Restricting A's unlimited right of using one hundred acres of land to a limited right of using the same land may work a far greater injury to A than to take from him the title in fee simple to one acre, leaving him the unrestricted right of using the remaining ninety-nine acres. Nobody doubts that the latter transaction would constitute a 'taking of property.' Why not the former?" *Eaton* v. *Railroad,* 51 N. H. 504, 511, 512.

It is clear, then, that the petition alleges a taking by the defendant of the plaintiff's property in land—a taking from the plaintiff of her common-law right of using, whenever she might choose, the power of the stream as an incident of her ownership of the land. The land without this power might be of little value,

while with it, it might be of very great value. The principal value of the plaintiff's real estate might consist in its natural availability for the development of water-power. To deprive her without her consent of this element of the value of her land, whether rightfully or wrongfully under the law, would be to deprive her *pro tanto* of her land; for the ownership of land in fee simple without the right to enjoy its use is a palpable contradiction of terms. It is inconceivable that the legislature intended to authorize one riparian owner to deprive another of the principal element of value in his land without compensation therefor; or that when it made it a condition of the right of flowage that damages should be paid for the injury to "the land" thus "overflowed, drained, or otherwise injured by the use of such dam," the taking and appropriation of the most valuable part of the landowner's interest in his real estate should be deemed *damnum absque injuria* when it consisted of undeveloped water-power. The language of the statute does not require such a construction. "Land" is there used in the sense of property in land, for the taking of which damages must be paid. Such, at least, is not an unreasonable construction of the word. This fact, in connection with the practical absurdity and injustice of confining the meaning within narrow, restricted, and unusual bounds, demonstrates that the legislature intended that the taking of undeveloped water-power by virtue of the statute should be regarded as an injury to the adjoining landowner's property in land, for which compensation must be made. *Dolbeer* v. *Company, supra.* Whether the statute is construed as authorizing the exercise of the power of eminent domain (*Great Falls Mfg. Co.* v. *Fernald,* 47 N. H. 444; *Ash* v. *Cummings,* 50 N. H. 591; *Light & Power Co.* v. *Hobbs,* 72 N. H. 531, 533), or of the power of regulating the rights of riparian owners (*Head* v. *Company,* 113 U. S. 9), the result in this case is the same. In either view, compensation must be made for depriving one of his right of property in land, for such is the evident meaning of the statute. Knowing that a riparian proprietor might have valuable rights in the fall of the stream as an incident to his ownership of the land, the evidence is slight and somewhat visionary that the legislature attempted to authorize another riparian owner to deprive him of those rights without also providing for his reimbursement. Whether a statute of that import could be sustained need not be considered, since the statute in question was not intended to have that effect.

Cases that reach a different result, like *Fuller* v. *Company,* 16

Gray 43, and *Cary* v. *Daniels*, 8 Met. 466, cannot be followed in this state, where the intention of the legislature, ascertained as a fact from competent evidence, must be given full effect, and where it is in effect decided that at common law undeveloped water-power is a property right inherent in the ownership of the adjacent land. *Electric Light Co.* v. *Jones, supra.* Nor does the fact that the defendant has a statutory right to set the water back upon the plaintiff's land because of its prior appropriation of the power of the river upon its land (*McMillan* v. *Noyes*, 75 N. H. 258) indicate a purpose on the part of the legislature to relieve it of the obligation to indemnify the plaintiff for depriving her of her valuable right to the reasonable use of the water opposite her land—a right incident to her ownership of the land. No doctrine of reasonableness arising from such prior appropriation transfers A's property, whether used by A or not, to the possession and use of B without compensation. In order to complete and protect its right of flowage, the defendant must pay the plaintiff for her property which it has appropriated.

It is urged in argument in behalf of the defendant that it would be difficult to assess the plaintiff's damages, that they are from the nature of the case problematical and visionary, and that their assessment would for that reason be impracticable. But without attempting to point out what evidence would be and what evidence would not be competent and admissible upon that question, we can discover no such inherent difficulty in reaching a conclusion upon it, that the amount of her damages could not be reasonably determined by the tribunal charged with that duty. The practical question would be: how much less was her land worth after the flowage than it was before? *Wright* v. *Company*, 75 N. H. 3, 6; *Electric Light Co.* v. *Jones, supra*, 182; *Philbrook* v. *Company*, 75 N. H. 599. The demurrer should be overruled.

*Case discharged.*

All concurred.