47 P.(2d) 414

**GALLUP AMERICAN COAL CO. v. GALLUP SOUTHWESTERN COAL CO.**

No. 3876.

Supreme Court of New Mexico.

June 22, 1935.

Rehearing Denied July 24, 1935.

Wilson & Woodbury, of Silver City, and Harris K. Lyle, of Gallup, for petitioner.

H. C. Denny, of Gallup, and J. O. Seth, of Santa Fé, for respondent.

WATSON, Justice.

The parties are corporations, each engaged in coal mining. The one, desiring lands of the other for uses of that industry, proceeded under 1929 Comp. St. § 88-401 et seq., and obtained judgment of condemnation.

An appeal from that judgment was here dismissed upon a holding that the cause was a special proceeding and that there had been no legislative grant of an appeal. Gallup S. W. C. Co. v. Gallup Am. C. Co., 39 N. M. 94, 40 P.(2d) 627. However, on a motion for rehearing, we determined to retain the record and the cause for hearing as upon certiorari. Id. The judgment is now before us for such limited review.

Petitioner (in certiorari) attacks the whole judgment as a taking of its property for private use. It first contends that the statute is void, as offensive of N. M. Const. art. 2, § 20: "Private property shall not be taken or damaged for public use without just compensation."

For purposes of this case the question should be considerably narrowed, and may be stated thus: Is it within legislative competence to declare a public use in the industry of coal mining, so as to permit taking private property in aid of it?

We have recently had occasion to consider the meaning of the phrase "public use" as employed in this connection. Threlkeld v. District Court, 36 N. M. 350, 15 P.(2d) 671, 86 A. L. R. 547. There we

referred to the "liberal" and the "orthodox" doctrines. Respondent, in maintaining that coal mining is a public use, or that the legislative fiat may make it such, confessedly must resort to the liberal doctrine.

Not without some reason perhaps, the petitioner contends that the Threlkeld decision commits us against the liberal view in its entirety. But, while we were obviously not converted to it, we put the decision on the ground that, even if "unusual local conditions" were to be consulted in determining what is a public use, there was nothing of the unusual about the lumber industry in New Mexico. And so we do not consider this court foreclosed against the liberal view so strongly urged upon us again.

As suggested in the Threlkeld decision, there is plenty of judicial expression in derogation of the strict interpretation of "public use." In argument, judges have frequently and strongly deprecated that tenderness for private property right which will sometimes "check progress and obstruct the larger good." However, the instances are not so numerous in which courts have upheld actual taking of private property for private use upon a theory that a "public benefit" is all that is required.

We shall not here refer to cases like Potlatch Lumber Co. v. Peterson, 12 Idaho, 769, 88 P. 426, 118 Am. St. Rep. 233, where the State Constitution (article 1, § 14) itself defined "public use" as "any * * * use necessary to the complete development of the material resources of the state": nor cases under Constitutions specifying certain industries as entitled to the right to take private property. We consider them unauthoritative under our Constitution.

Respondent's greatest reliance is placed on Dayton Mining Co. v. Seawell, 11 Nev. 394, and Highland Boy Gold Mining Co. v. Strickley, 28 Utah, 215, 78 P. 296, 1 L. R. A. (N. S.) 977, 107 Am. St. Rep. 711, 3 Ann. Cas. 1110. In these two cases, as the Arizona Supreme Court has well said in Inspiration, etc., Co. v. Keystone, etc., Co., 16 Ariz. 257, 144 P. 277, 279, a case also cited by respondent, two state supreme courts "have decided that private property may be taken for private use in connection with * * * mining."

Continuing, the Arizona Supreme Court says: "It is true that such courts have indulged the fiction that a private use is a public use, simply because it was for the general welfare or of public utility or benefit, but this conceit, however pardonable, does not change the use from private to public. The fact is that the above cases hold that private property may be taken for private uses in the particular instances passed upon, and our Constitution in providing in certain cases that private property may be taken for private uses is in line with those decisions."

The Utah case was affirmed by the United States Supreme Court. Strickley v. Highland Boy Gold Mining Co., 200 U. S.

527, 26 S. Ct. 301, 50 L. Ed. 581, 4 Ann. Cas. 1174. But in the higher court the question was not upon the interpretation of "public use" as employed in the Utah Constitution. The question was how far a state could go in its Constitution, laws, and decisions in the taking of private property, without offense to the due process clause of the 14th amendment. That is always a delicate question, and there is a slowness and reluctance to exercise "censorship of state legislation." Cf. Fallbrook Irr. Co. v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369, 388; Hairston v. Danville & W. R. Co., 208 U. S. 598, 28 S. Ct. 331, 52 L. Ed. 637, 13 Ann. Cas. 1008; Noble St. Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. Ed. 112, 116, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487, all cases cited by respondent. This delicacy and reluctance we commented upon in State v. Henry, 37 N. M. 536, 540, 543, 25 P.(2d) 204, 90 A. L. R. 805.

So we do not attribute great importance to Clark v. Nash, 198 U. S. 361, 25 S. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171, or to Strickley v. Highland Boy Gold Min. Co., supra, in this connection. It is not as if the Supreme Court had there held that Congress could declare a public use in the mining industry without offense to the Fifth Amendment.

We should perhaps mention, however, that a high federal court seems to have viewed the matter otherwise. In Miocene Ditch Co. v. Jacobsen (9th C. C. A.) 146 F. 680, a statute of Alaska was involved (Code, c. 22, § 204 [31 Stat. 522]), the validity of which was of course to be tested by the Fifth Amendment. In upholding the statute declaring mining a public use, this Circuit Court of Appeals seems to rely upon the cases mentioned as direct authority.

The only decision of the highest federal tribunal cited by respondent which could have involved the Fifth Amendment is Block v. Hirsh, 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165, where there was brought in question an Act of Congress (Act Oct. 22, 1919, c. 80, § 101 et seq., 41 Stat. 298) applicable in the District of Columbia. That act, which the court upheld, provided for a taking *without compensation*. It was sustained, not under the power of eminent domain, but as a temporary and emergent exercise of the police power.

The Supreme Court of Georgia has upheld a statute investing a gold mining company with the right of eminent domain. After stating as "a fundamental principle of the law" that "private property cannot be taken for the *exclusive* use of private persons," the court thus pointed out the "public good" to result: "The increased production of gold * * * must necessarily be for the public good, inasmuch as it will increase, for the use of the public, a safe, sound, constitutional circulating medium, which is of vital importance to the

permanent welfare and prosperity of the people. * * *" Hand Gold Min. Co. v. Parker, 59 Ga. 419.

Respondent urges that the numerous decisions upholding statutes of eminent domain in aid of water power industries are directly in point, and cites Head v. Amoskeag Mfg. Co., 113 U. S. 9, 5 S. Ct. 441, 445, 28 L. Ed. 889. The decision is enlightening, though scarcely in aid of the contention. It explains a matter that has sometimes proved perplexing. The earlier statutes and decisions involved gristmills. In those cases we find no difficulty, under modern views, in admitting the "public use." A gristmill was a toll mill. The public had a right to the service at the regular rates of toll. These were the original public utilities. But that principle could not be invoked in aid of the later statutes extending the right to industries purely private. The decision cited points out a principle justifying such statutes regardless of any right of taking property for public use.

The conclusion was reached "independently of any weight due to the opinions of the courts of New Hampshire and other states, maintaining the validity of general Mill Acts as taking private property for public use." The court said: "The question whether the erection and maintenance of mills for manufacturing purposes under a general mill act, of which any owner of land upon a stream not navigable may avail himself at will, can be upheld as a taking, by delegation of the right of eminent domain, of private property for public use, in the constitutional sense, is so important and far reaching, that it does not become this court to express an opinion upon it, when not required for the determination of the rights of the parties before it. We prefer to rest the decision of this case upon the ground that such a statute, considered as regulating the manner in which the rights of proprietors of lands adjacent to a stream may be asserted and enjoyed, with a due regard to the interests of all, and to the public good, is within the constitutional power of the legislature."

We appreciate the difficulty of the problem brought to the Supreme Court of Nevada, in 1876, in Dayton Min. Co. v. Seawell, supra. Nevada would not have been born as a state, it would not have been populated, but for its precious metal resources. Public and private livelihood were almost solely dependent upon mining. The state's growth, its continued existence, depended or seemed to depend upon development of that industry. One recalcitrant property owner could incalculably impede realization of the general aspiration for development. Such a situation would be exasperating and would seem intolerable.

So, in Utah, private irrigation was a principal reliance for the upbuilding of a great commonwealth. And when the claim of the mining industry was presented in Highland Boy Gold Min. Co. v. Strickley,

supra, the court found in Nash v. Clark, 27 Utah, 158, 75 P. 371, 1 L. R. A. (N. S.) 208, 101 Am. St. Rep. 953, 1 Ann. Cas. 300 (somewhat discussed in the Threlkeld decision), all the reasoning necessary to sustain it. The court was moved even to point out the incongruity of permitting the owner of "a few square rods" to condemn a right of way for its irrigation, and of denying at the same time the same right to the owner of a great mine or mill, which would contribute so much more to the general good.

Without implying any criticism of these decisions or of this reasoning, we are impressed that they well illustrate a danger. Once we depart from the "orthodox" view, we shall find no easy or logical stopping place. Confusion and uncertainty will surround every battle between private right and public benefit, and Mr. Lewis' apprehension may prove well founded, that "this important constitutional right of the individual * * * would exist only at the whim of Legislature or court."

We are now at the point at which we paused in the Threlkeld Case. We are reluctant still to surrender the "orthodox" view. Yet we need not and do not say what we should do in some different case. In view of the conclusion we are to reach, it may be thought that we might have arrived more directly. We wish to leave no doubt, however, that we have given thought to the arguments and authorities adduced by respondent's able counsel.

Here we are concerned with coal mining. As an essential or paramount industry, in its importance to the existence and functioning of the state and to the livelihood of the people, it does not seem to us to belong in a class with metal mining in Nevada, as appraised in Dayton Mining Co. v. Seawell, supra, or with irrigation in Utah or New Mexico, as appraised in Nash v. Clark, supra, and in City of Albuquerque v. Garcia, 17 N. M. 445, 130 P. 118, and other New Mexico cases. We consider it rather in a class with the timber or lumbering industry which was involved in the Threlkeld Case. We are not moved to accept the "liberal" view to an extent that would embrace this industry.

It follows that, in so far as the statute impliedly declares a public use in the business or industry of coal mining, it is violative of N. M. Const. art. 2, § 20, and that the court lacked jurisdiction to render the judgment.

The cause will be remanded, with a direction to the district court to set aside its judgment and to dismiss the proceeding.

It is so ordered.

SADLER, C. J., and BICKLEY, J., concur.

HUDSPETH and ZINN, JJ., did not participate.