15 P.(2d) 671

## THRELKELD v. THIRD JUDICIAL DISTRICT COURT IN AND FOR OTERO COUNTY et al.

### No. 3780.

Supreme Court of New Mexico.
July 8, 1932.

George A. Threlkeld, of Roswell, for peti-
tioner.

J. B. Newell, of Las Cruces, for respond-
ents.

On Rehearing.

WATSON, J.

Our alternative writ of prohibition has
stopped proceedings by respondent in the
district court to condemn petitioner's land
for use as a logging railroad. To the petition
for the alternative writ, respondent has de-
murred.

The Southwest Lumber Company showed
in the district court that it is a private cor-
poration engaged in lumbering and logging,
and holding large contracts with the federal

government and with the state for the harvesting of timber, to reach which it desires to construct a spur from its existing logging railroad across petitioner's lands; that the proposed route is the most favorable by which to reach a body of timber which would supply its plant at Alamogordo with raw materials for a period of eighteen years; that some of such timber is accessible only by crossing petitioner's lands, and that none of it is equally accessible otherwise; that the right of way is necessary to enable the federal government and the state to dispose of timber owned by them respectively; that a large portion of the proceeds from federally owned timber is turned over to the counties for public use, and that a portion of such proceeds is expended on roads and trails in forest areas; that the harvesting of timber is essential to carry out the policies of the national forestry service; and that from the sales of timber on state lands large sums of money will be derived by state institutions.

Petitioner's demurrer having been overruled, he applied to this court.

Our statute, Laws 1905, c. 97, Comp. St. 1929, § 43-101 et seq., gives railroad, telephone, and telegraph companies the right of eminent domain and prescribes condemnation procedure. It also provides for the taking of private property for certain other public uses. Sections 20 and 21 of that act read as follows:

"All corporations, lawfully doing business in the state of New Mexico, and engaged in the manufacture of logs, lumber or timber, shall have the right to construct, maintain and operate logging roads, chutes, flumes or artificial water courses for the transportation of its logs and other timber products, and shall have the right and power to acquire, hold, use and, whenever the rights of any interested party shall not be affected thereby may transfer, all such real and personal property as shall be reasonably necessary for the construction and maintenance of such logging roads, chutes, flumes and artificial water courses: Provided, that such corporations operating under the provisions of this section shall be subject to the laws in force governing common carriers." (L. '05, c. 97 § 20, Comp. St. 1929, § 43-120.)

"Such corporations shall have the right of eminent domain and shall have the right to condemn and appropriate property for the uses and purposes set forth in section 1 (43-101) of this chapter. Such right of eminent domain and condemnation shall be exercised in the manner prescribed by this chapter: Provided, that any property acquired under the provisions of this chapter shall be used exclusively for the purposes as set forth in this chapter and whenever the use of such property as herein contemplated shall cease for the period of three years, the same shall revert to the original owner, his heirs or assigns." (L. '05, c. 97, § 21, Comp. St. 1929, § 43-121.)

Counsel disagree both as to the meaning and as to the constitutionality of these provisions. We naturally endeavor first to ascertain the meaning.

One difference arises out of the proviso in section 20. Petitioner contends that it limits the right to logging companies already subject to the laws in force governing common carriers. So, he contends, the failure to claim such status is fatal to the right and to the jurisdiction.

Respondent contends that the proviso means only that a private logging company must proceed in condemnation as a common carrier is required to proceed.

We find nothing to support respondent's contention. Not only is the language quite inappropriate to express such meaning, but we find the matter of procedure covered by section 21, where it is provided that "such right * * * shall be exercised in the manner prescribed by this chapter," apparently referring to earlier sections.

Nor are we better satisfied with petitioner's theory. The right had been, in earlier sections, conferred upon common carriers by railroad. Sections 20 and 21 were evidently intended to confer the right upon companies not organized as common carriers or so engaged.

As we view it, the true meaning must be that a logging company, by invoking the right granted, subjects itself to the laws in force governing common carriers. On the face of the statute the matter is not plain. This meaning emerges, however, when the two sections are construed together and in the light of general principles governing the taking of private property for public use.

A further and more important inquiry presents itself: What are the public uses for which logging companies may take private property? Section 21 says "for the uses and purposes set forth in section 1" (Comp. St. 1929, § 43-101). In section 1 there is nowhere an express declaration of public use. The "case" dealt with by the section is that of a railroad, telephone, or telegraph company, seeking to appropriate lands or other property "for public use." It later appears, by inference, that the Legislature contemplated the "line" as the particular use for which it authorized the taking. By section 14 (Comp. St. 1929, § 43-114) there is a special provision for depots.

So, even when the right is claimed by a railroad, telephone, or telegraph company for a right of way for its line, it would seem that there is back of it all the condition that the line must serve a "public use."

True, the procedural sections of the act do not expressly require a showing of public use, or a conclusion by the court on that matter. But, in framing these provisions, the Legislature evidently had in mind railroad, telegraph, and telephone companies, whose ordinary businesses are universally admitted to be public utilities. They are required to set forth in their petitions "the general directions in which it is desired to construct their * * * line(s) * * *." This affords an opportunity to make an issue of public use and to have a judicial determination of it.

Thus we conclude that the Legislature has in no case made a positive declaration of public use, and that in all cases before appointing commissioners to award compensation the court should be persuaded that the taking is for a public use.

Thus interpreting the statute, we do not find it violative of N. M. Const. art. 2, § 20, which provides: "Private property shall not be taken or damaged for public use without just compensation." The Legislature has not assumed to authorize taking for private use. It has not authorized any taking except upon condition that it be for public use.

Hence respondent's right to take petitioner's land must be shown by a petition presenting a case of public use.

Counsel for respondent rests his case upon the liberal, or, as many have termed it, "loose," interpretation of the term "public use." An abundance of judicial declaration has been cited which, if given full force, would warrant holding that the great indirect benefits to the public from a successful prosecution of respondent's enterprise, in particular, amount to a "public use" within the meaning of the Constitution. Much of this judicial declaration must be discounted, since the views expressed and theories announced have often gone beyond the necessities of the cases to be decided. Some of the most striking and most frequently cited declarations of principle have resulted merely in holding that public railroads and other utilities may be accorded the right of condemnation—a conclusion now universally accepted.

Despite these many contrary statements, we think it the orthodox view that "public use" is not, in the constitutional sense, mere "public benefit." Lewis' Em. Dom. (3d Ed.) § 258; Nichols on Em. Dom. (2d Ed.) § 40 et seq.; Annotation 54 A. L. R. 7. If it were, this important constitutional right of the individual would be frittered away in uncertainty, and would exist only at the whim of Legislature or court. Lewis' Em. Dom. (3d Ed.) § 258.

It is suggested, however, that this court is committed to the liberal doctrine, since we have sustained the power of eminent domain as conferred by statute upon persons needing rights of way for irrigation. Young v. Dugger, 23 N. M. 613, 170 P. 61. In so holding, City of Albuquerque v. Garcia, 17 N. M. 445, 130 P. 118, was said to be controlling, and that case relied on the authority of Nash v. Clark, 27 Utah, 158, 75 P. 371, 1 L. R. A. (N. S.) 208, 101 Am. St. Rep. 953, 1 Ann. Cas. 300. Questioning the soundness of the Utah decision, an annotator has remarked that it "pushes the doctrine of the right * * * of eminent domain for the benefit of a private individual further than it has ever before been pushed. * * *" 1 L. R. A. (N. S.) 208.

Nevertheless, we may indorse all that was said in Nash v. Clark, supra, regarding irrigation as a public use, without accepting the view of the majority in that case that "enlightened public policy" is better represented by the "line of decisions" which would impair the constitutional guaranty by accepting as a "public use" anything thought to

promote the public interest. We think that by incorporating in our Constitution the time-honored formula for the protection of private property, we adopted its generally recognized meaning.

However, we already had a policy, also time-honored, as to waters. We had nationalized them. Not as a source of public revenue, as minerals are retained for royalties; but as an elemental necessity, like air, which must not be allowed to fall under private control. Only by invoking the power of eminent domain can the state distribute its own waters as its public policy requires. A right of way taken for that purpose is in a large sense devoted to public use. This policy finds general and express recognition in the Constitution. It is impossible to suppose that any interpretation of "public use" was intended to upset it.

Mr. Nichols, seeking the true meaning of "public use," and more indulgent and discerning than some, includes in his definition a classification in which Young v. Dugger, supra, belongs: "(3) in certain special and peculiar cases sanctioned by ancient custom or justified by the requirements of unusual local conditions, to enable individuals to cultivate their land or carry on business in a manner in which it could not otherwise be done, if their success will indirectly enhance the public welfare, even if the taking is made by a private individual and the public has no right to service from him or enjoyment of the property taken." Nichols on Em. Dom. (2d Ed.) § 45.

The lumber industry does not fit into this classification. It presents the same question here as in other states favored with timber resources.

Potlatch Lumber Co. v. Peterson, 12 Idaho, 769, 88 P. 426, 429, 118 Am. St. Rep. 233, is strongly relied on by respondent. The court did in that case express views lending aid to those who subordinate the individual right to the demands of progress. But the decision cannot weigh with us. It was inevitable, seemingly, in view of the provision of the Idaho Constitution that "any * * * use necessary to the complete development of the material resources of the state * * * is hereby declared to be a public use. * * *" The liberal view having found place in the state's Constitution, the matter was settled. The property owner had no shield but the due process clause of the Fourteenth Amendment, invoked in vain in Clark v. Nash, 198 U. S. 361, 25 S. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171.

Mr. Nichols seems inclined to deprecate that policy of the Constitution which may check progress and obstruct the larger good. Yet, he says: " * * * Although lumbering is in many states an industry of greatest importance, and the difficulty of bringing out logs through a district so sparsely settled that it is not penetrated by the general highway system is often serious, the accepted principles of constitutional law have not been departed from, and the courts have not allowed the power of eminent domain to be bestowed upon individuals or corporations

to enable them to get their own logs to market by land or water, except in a state in which the constitution authorizes the exercise of eminent domain for any use necessary to the complete development of the material resources of the state." Em. Dom. (2d Ed.) § 93.

So we conclude that the public benefits promised by the petition do not amount to public use in the constitutional sense.

We do not think respondent's case is aided by the fact that if it should succeed in appropriating petitioner's land the statute would subject it to the laws in force governing common carriers.

We shall assume for present purposes, but without deciding, that if there were a reasonable showing of a public to be served, and of an ability and willingness to render service as a common carrier, respondent might prevail. It makes no such showing. It has disclaimed intent or desire to become a common carrier. It has here denied, as a proposition of law, that it would be subjected to the laws governing common carriers.

Respondent might be a common carrier in name, by legislative fiat. Common carriage generally is a public utility. But it is not the name or the theoretical status that furnishes the criterion. "Public use," say both Constitution and statute, is the essential thing.

As generally supporting this conclusion, we may cite Boyd v. C. L. Ritter Lumber Co., 119 Va. 348, 89 S. E. 273, L. R. A. 1917A, 94; Healy Lumber Co. v. Morris, 33 Wash. 490, 74 P. 681; Hench v. Pritt, 62 W. Va. 270, 57 S. E. 808, 125 Am. St. Rep. 966; Gauley & S. R. Co. v. Vencill, 73 W. Va. 650, 80 S. E. 1103; Apex Transp. Co. v. Garbade, 32 Or. 582, 52 P. 573, 54 P. 367, 882, 62 L. R. A. 513.

As this matter has taken shape finally, there may be a question whether prohibition is the proper remedy. No serious objection has been made on that score. The case having been carefully presented and considered, we think it would now be an abuse not to dispose of it in this proceeding.

This brings us to a result different than that reached in the opinion handed down April 14, last. For convenience and brevity, that opinion will be withdrawn.

The alternative writ will be made absolute. It is so ordered.

BICKLEY, C. J., and SADLER and HUDSPETH, JJ., concur.

PARKER, J., did not participate.