467 P.2d 986

**KAISER STEEL CORPORATION, a Corporation, Plaintiff-Appellee,**

v.

**W. S. RANCH COMPANY, a Corporation, Defendant-Appellant.**

No. 8842.

Supreme Court of New Mexico.
March 16, 1970.

Rehearing Denied April 29, 1970.

Montgomery, Federici, Andrews, Hannahs & Morris, Seth D. Montgomery, Santa Fe, Robertson & Robertson, Raton, for appellant.

Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, Wright & Kastler, Raton, for appellee.

## OPINION

MOISE, Chief Justice.

In this case, involving a simple but interesting fact situation we are called upon to answer two legal problems of first impression in this jurisdiction. These are: (1) Is § 75–1–3, N.M.S.A.1953, constitutional as applied to the parties and facts in this case? (2) Is inverse condemnation the exclusive remedy available to defendant-appellant, hereinafter referred to as "Ranch"?

Plaintiff-appellee, hereinafter referred to as "Kaiser," owns a tract of land located some distance from the Vermejo River in Colfax County, New Mexico, which tract is completely surrounded by lands owned by Ranch. Kaiser also owns certain water rights in the river, which it is entitled to use for industrial purposes. See W. S. Ranch Company v. Kaiser Steel Corporation, 79 N.M. 65, 439 P.2d 714 (1968), where certain of the rights of the parties to the water were litigated.

In order for Kaiser to use the water in a coal mine being developed by it, the water had to be made available on its land. This was accomplished in 1966 by the simple expedient of Kaiser sending its employees onto the lands of Ranch, drilling some holes or wells in the stream bed, and laying a pipeline from the river source across the lands of Ranch to the coal property of Kaiser, all without seeking permission of Ranch, or undertaking to condemn under § 75–1–3, supra. This action by Kaiser was followed promptly by the filing of an action in the United States District Court, based on diversity of citizenship, wherein an injunction against further trespasses was sought, as well as compensatory and punitive damages for the past trespasses.

After the hearing, the complaint of Ranch was dismissed for failure to state a claim on which relief could be granted. On appeal, the decision of the District Court was reversed. W. S. Ranch Company v. Kaiser Steel Corporation, 388 F.2d 257 (10th Cir. 1967). Thereafter, Kaiser filed a petition for rehearing and a motion for a stay pending determination of the issues presented in a declaratory judgment action instituted by Kaiser that day in the District Court of Colfax County. Both requests were denied. On certiorari the United States Supreme Court, in a per curiam opinion, reversed the holding denying the stay, and remanded the case with directions that a stay be granted pending determination of the issues raised in the declaratory judgment action filed as set out above. Kaiser Steel Corporation v. W. S. Ranch Company, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968).

After issue was joined in the declaratory judgment action, Ranch filed a motion for judgment on the pleadings and Kaiser asked for summary judgment. The trial court granted summary judgment to Kaiser, and made the following determinations:

"2. The Court hereby declares that Kaiser Steel Corporation, a corporation, has, under § 75–1–3, New Mexico Statutes Annotated, 1953 Compilation, which statute is constitutional under the Constitution of the State of New Mexico, the power of eminent domain for the purpose of entry upon, and use of, the lands more particularly described in the Amended Complaint on file herein for the purpose of diversion and transportation of its recognized water rights to its York Canyon Mine and processing facilities; and

"3. That the exclusive remedy of the Defendant, W. S. Ranch Company, for the existing entry upon and use of said lands described in the Amended Complaint for the said water distribution purpose is that of 'inverse condemnation' as set forth under Section 22–9–22, New Mexico Statutes Annotated, 1953 Compilation, as Amended."

We here consider whether the court ruled correctly on these two issues.

We restate the first question which we are called on to determine as follows: Does

the New Mexico Constitution permit a taking of private property by a person, firm or corporation, for the conveyance of water for use in an industrial endeavor, specifically coal mining? Refining the issue further, it becomes one of whether the question of public use turns on the ultimate purpose for which the property was taken, or on the nature of the product (water) involved.

Section 75–1–3, supra, reads as follows:

"The United States, the state of New Mexico, or any person, firm, association or corporation, may exercise the right of eminent domain, to take and acquire land right of way for the construction, maintenance and operation of reservoirs, canals, ditches, flumes, aqueducts, pipelines or other works for the storage or conveyance of water for beneficial uses, including the right to enlarge existing structures, and to use the same in common with the former owner; any such right of way for canal, ditch, pipeline, or other means for the conveyance of water shall in all cases be so located as to do the least damage to private or public property consistent with proper use and economical construction. Such land and right of way shall be acquired in the manner provided by law for the condemnation and taking of private property in the state of New Mexico for railroad, telegraph, telephone and other public uses and purposes. The engineers and surveyors of the United States, the state and of any person, firm or corporation shall have the right to enter upon the lands and waters of the state and of private persons and of private and public corporations, for the purpose of making hydrographic surveys and examinations and surveys necessary for selecting and locating suitable sites and routes for reservoirs, canals, pipelines and other waterworks, subject to responsibility for any damage done to such property, in making such surveys."

The statute clearly provides a right in "any person, firm, association or corporation" to condemn land right of way for "construction, maintenance and operation" of "canals, ditches, * * * pipelines or other works for the storage or conveyance of water for beneficial uses, * * ·*."

It is the position of Ranch that if § 75–1–3, supra, is read to permit a taking for any "beneficial use" it necessarily conflicts with the New Mexico Constitution, Art. II, § 20, which reads in its entirety, "Private property shall not be taken or damaged for public use without just compensation."

At the outset, there can be no question under our Constitution that the taking or damaging of private property through eminent domain is permitted for none other than a public use. Threlkeld v. Third Judicial District Court, 36 N.M. 350, 15 P.2d 671, 86 A.L.R. 547 (1932). However, with this statement our problem is not answered; as a matter of fact, it only commences. What is meant by the term "public use"? When we can arrive at a definition, we will be approaching the answer to Ranch's contention that there was no element of public use present in Kaiser's entry upon Ranch's land for the purpose of laying pipelines to convey water to its coal mine. This latter statement has a measure of support in this state in our holding in Gallup American Coal Co. v. Gallup Southwestern Coal Co., 39 N.M. 344, 47 P.2d 414 (1935).

In the Gallup case, this Court considered the meaning of "public use" as applied to the coal mining industry. We weighed the so-called "liberal" approach to the definition of "public use," as opposed to one described as "orthodox," and, for a second time (the first being in Threlkeld, supra), refused to embrace either one fully. While expressing some concern that upon departing "from the 'orthodox' view, we shall find no easy or logical stopping place," we stated we were not willing to accept the "liberal" view so as to embrace coal mining, but did not foreclose a different result in another case. We concluded that coal mining was more "in a class with the timber or lumbering industry" than with metal mining in Nevada, held to be a public use in Nevada, in Dayton Gold & Silver Mining

Co. v. Seawell, 11 Nev. 394 (1876), or with irrigation in Utah, as determined in Nash v. Clark, 27 Utah 158, 75 P. 371, 1 L.R.A., N.S., 208 (1904), aff'd 198 U.S. 361, 25 S.Ct. 676, 49 L.Ed. 1085, (1905), or in New Mexico, as concluded in City of Albuquerque v. Garcia, 17 N.M. 445, 130 P. 118 (1913).

This brings us to a consideration of the new or different element present in the instant case, and absent from the Gallup case. Here we are dealing with condemnation for a right of way to convey water under § 75-1-3, supra, to be used in coal mining, whereas in the Gallup case, condemnation for a road or highway right of way was at issue under § 88-401, N.M.S.A.1929 (now appearing at § 22-9-30, N.M.S.A.1953). Does the fact that the element of water has been introduced require a result different from that reached in Threlkeld, supra, and in Gallup, supra? Appellant says "no," whereas, appellee says "yes."

In approaching the problem, we would state at the outset that the fact that two different statutes (§§ 22-9-30, supra, and 75-1-3, supra) are involved is not material to our analysis. Neither do we propose to depart from the position taken in the earlier cases and hold that any "public benefit" is equivalent to "public use." We remain unconvinced that all rights in private property should be left unprotected from the ambitions and plans and hopes of the advocates of unrestricted or unlimited progress. Accordingly, we here consider only if a different result from that reached in Gallup, supra, follows because of the fact that the right of way being sought is for transportation of water, as distinguished from conveyance by truck of a natural resource, such as lumber or coal.

Consideration of this issue requires us to look to our constitutional provisions relating specifically to water. We note Art. XVI, §§ 1, 2 and 3, which we quote:

"Section 1. All existing rights to the use of any waters in this state for any useful or beneficial purpose are hereby recognized and confirmed.

"Section 2. The unappropriated water of every natural stream, perennial or torrential, within the state of New Mexico, is hereby declared to belong to the public and to be subject to appropriation for beneficial use, in accordance with the laws of the state. Priority of appropriation shall give the better right.

"Section 3. Beneficial use shall be the basis, the measure and the limit of the right to the use of water."

We perceive in these provisions that water was placed in a unique category in our Constitution—something that cannot be said of lumbering, coal mining, or any other element or industry. The reason for this is of course too apparent to require elaboration. Our entire state has only enough water to supply its most urgent needs. Water conservation and preservation is of utmost importance. Its utilization for maximum benefits is a requirement second to none, not only for progress, but for survival. Recognition of these facts, as well as a conviction that the doctrine of prior appropriation was better suited to accomplishing the desired ends than was the common law riparian doctrine must have been the principal reason for the adoption in this state of the prior appropriation doctrine as the law applicable to water. See Yeo v. Tweedy, 34 N.M. 611, 615, 286 P. 970 (1929).

Admittedly, the use of water for irrigation was held by our Territorial Supreme Court to be a public use, making legal the provision of our law permitting a taking of the land of another, by an individual, to convey water to the place where the use was to be made. The Albuquerque Land and Irrigation Company v. Gutierrez, 10 N.M. 177, 61 P. 357 (1900), aff'd 188 U.S. 545, 23 S.Ct. 338, 47 L.Ed. 588 (1903). This case was held controlling in the later cases of City of Albuquerque v. Garcia, supra; and Young v. Dugger, 23 N.M. 613, 170 P. 61 (1918). See also Pueblo of Isleta v. Tondre, 18 N.M. 388, 137 P. 86 (1913). That water holds a unique position in our public policy was recognized in Threlkeld v. Third

Judicial District Court, supra, where we said:

"* * * [W]e already had a policy, also time-honored, as to waters. We had nationalized them. Not as a source of public revenue, as minerals are retained for royalties; but as an elemental necessity, like air, which must not be allowed to fall under private control. *Only by invoking the power of eminent domain can the state distribute its own waters as its public policy requires. A right of way taken for that purpose is in a large sense devoted to public use.* This policy finds general and express recognition in the Constitution. It is impossible to suppose that any interpretation of 'public use' was intended to upset it." (Emphasis added.)

We now approach the crucial question of whether the "ultimate use," i. e., irrigation, mining, lumbering, etc., is controlling, and determinative of the question of "public use," or, is the answer controlled by the fact that the condemnation at issue is for a right of way to carry water?

The United States Court of Appeals for the Tenth Circuit, in W. S. Ranch Company v. Kaiser Steel Corporation, supra, after reviewing the cases cited above, concluded that the "ultimate use" was determinative. It reasoned that since this Court had held in Gallup American Coal Co. v. Gallup Southwestern Coal Co., supra, that when the ultimate use was coal mining, there was an absence of "public use," necessarily the use here being attempted was not public and accordingly condemnation was not permissible. In so holding, special emphasis was placed on language of this Court in Pueblo of Isleta v. Tondre, supra; in Young v. Dugger, supra; and in City of Albuquerque v. Garcia, supra. In all of these cases it was clearly stated that the right of condemnation existed in private persons for the purpose of conveying water for *irrigation purposes* over the land of another. Note was taken that in State ex rel. Red River Valley Co. v. District Court of Fourth Judicial District, 39 N.M. 523, 51 P.2d 239 (1935), the Court stated that irrigation as a use had long ago been held to be a public use. Based on this language, as well as on the fact that ultimate use apparently controlled our decision, both in Threlkeld, supra, and Gallup, supra, the Circuit Court felt it was on solid ground in holding that "ultimate use" was the controlling factor and accordingly, Kaiser could not condemn for a right of way to convey water for use in coal mining.

Although we hold the United States Court of Appeals for the Tenth Circuit in the highest esteem, and hesitate to take issue with its very thoughtful and erudite opinion, because of the importance of the issue to this State, and our complete confidence in our conclusion, we must respectfully disagree with the holding therein.

In doing so, it behooves us to explain our reasons in some detail. We would first note that each of our cases wherein a public use has been found in situations involving transportation of water (and consequently condemnation by private parties for rights of way was held permissible) has been a case involving irrigation. However, it should be noted that in no circumstance have we stated or suggested that right of way to convey water for industrial or other "beneficial" uses would not be for "public use." That we did not indulge in that hazardous pastime of incorporating dicta covering issues not present is to our credit. Only now when we are at last directly faced with the problem involving right of way for conveying water for industrial use is the time for us to speak on it.

■ We recognize that coal mining in New Mexico is not a public endeavor and that because of the lack of the element of "public use" the right of eminent domain would not exist in private parties for a roadway over which to transport coal. Gallup American Coal Co. v. Gallup Southwestern Coal Co., supra. However, that fact does not foreclose the possibility of a "public use" for the beneficial utilization

of water for a purpose other than irrigation. As a matter of fact, we find ourselves unable to rationalize use of water by a private citizen for irrigation as a public use, and at the same time the use of the same water by the same person for mining coal not to be. We do not suppose for a moment that it is the use for growing crops or producing food that has moved this Court to hold as it has concerning irrigation as a public use. Rather, it must have been the fact of beneficial use of water which unquestionably is of the greatest importance to the state, that dictated the result. Appropriation is not complete until the water has been put to beneficial use. State ex rel. State Engineer v. Crider, 78 N.M. 312, 431 P.2d 45 (1967). *It is beneficial use that is of primary importance,* not the particular purpose (ultimate use) to which the water is put. Such beneficial uses would be impossible to accomplish without the means to transport or convey the water from its source to the place of utilization. Thus, out of necessity, in 1907, the right of eminent domain was provided for the "storage and conveyance of water for beneficial uses,"—not for irrigation or domestic purposes alone, *but for all beneficial uses.* (Ch. 49, § 3, N.M.S.L. 1907). The particular ultimate use is not important, so long as the water is applied beneficially in accomplishing it. The quotation above from the Threlkeld case, to our minds, albeit dicta and used in connection with a discussion of a so-called "liberal" as opposed to the "orthodox" doctrine of public use, clearly foretold the correct analysis and conclusion under the facts now before us.

We conclude that the act permitting condemnation for rights of way to convey water is not vulnerable to the attack here levied against it, since it is in the public interest that distribution of water be provided so long as the use to which the water is to be put is beneficial, and accordingly such distribution is a public use as well. See § 68–2–1, N.M.S.A., 1953; Albuquerque Land and Irrigation Company v. Gutierrez, supra; State ex rel. Red River Valley Co. v. District Court of Fourth Judicial District, supra; Nash v. Clark, supra. The following language from the Nash case fully recognizes the problem:

"* * * [W]hether a statute of a state permitting condemnation by an individual for the purpose of obtaining water for his land or for mining should be held to be a condemnation for a public use, and, therefore, a valid enactment, may depend upon a number of considerations relating to the situation of the state and its possibilities for land cultivation, or the successful prosecution of its mining or other industries. Where the use is asserted to be public, and the right of the individual to condemn land for the purpose of exercising such use is founded upon or is the result of some peculiar condition of the soil or climate, or other peculiarity of the state, where the right of condemnation is asserted under a state statute, we are always, where it can fairly be done, strongly inclined to hold with the state courts, when they uphold a state statute providing for such condemnation. The validity of such statutes may sometimes depend upon many different facts, the existence of which would make a public use, even by an individual, where, in the absence of such facts, the use would clearly be private. Those facts must be general, notorious, and acknowledged in the state, and the state courts may be assumed to be exceptionally familiar with them. They are not the subject of judicial investigation as to their existence, but the local courts know and appreciate them. They understand the situation which led to the demand for the enactment of the statute, and they also appreciate the results upon the growth and prosperity of the state which, in all probability, would flow from a denial of its validity. These are matters which might properly be held to have a material bearing upon the question whether the individual use proposed might not in fact be a public one. It is not alone the

fact that the land is arid and that it will bear crops if irrigated, or that the water is necessary for the purpose of working a mine, that is material; other facts might exist which are also material—such as the particular manner in which the irrigation is carried on or proposed, or how the mining is to be done in a particular place where water is needed for that purpose. The general situation and amount of the arid land or of the mines themselves might also be material, and what proportion of the water each owner should be entitled to; also the extent of the population living in the surrounding country, and whether each owner of land or mines could be, in fact, furnished with the necessary water in any other way than by the condemnation in his own behalf, and not by a company, for his use and that of others." 198 U.S. 361, 25 S.Ct. 676, at 678, 49 L.Ed., at 1087.

See also, Annot. 54 A.L.R. 56.

▉ In holding as we do, we are not concerned that we are unduly lowering the bars to permit taking of private property for other than public use, which the court in the Threlkeld case feared would result if the "liberal" rule were embraced. To the contrary, we hold that a jus publicum being present in water, State ex rel. Red River Valley Co. v. District Court of Fourth Judicial District, supra, its beneficial use is a public use, and condemnation of a right of way to make the beneficial use possible is clearly provided for in § 75–1–3, supra, and is constitutional.

▉ We are further convinced that a "public use" is present in this case because the legislature, in § 75–1–3, supra, has given to persons, firms, associations and corporations, the right to condemn land right of way for the purpose of conveying water for beneficial uses. Since the power of eminent domain cannot be exercised without a "public use" being present, the legislature has impliedly declared such a "public use" to be present in such conveyance of water. Although, in the last

analysis, the question of "public interest" is a judicial one, the presumption is that a use is public if the legislature has declared it to be such, and the decision of the legislature must be treated with the consideration due to a coordinate branch of our government. 2 Nichols on Eminent Domain § 7.4(1) (3d Ed. 1965). In fact, it has been held that when the legislature has spoken, the public interest (i. e., "public use") has been declared in terms well-nigh conclusive. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). Since our legislature has, in effect, declared the use in question to be public, we are constrained to accept their judgment in the absence of obvious unconstitutionality. We find no such defect. For further indications of a legislative declaration of "public use" in the conveyance of water in the circumstances comparable to our case, see §§ 68–2–1, 68–2–17, 68–2–18, N.M.S.A., 1953.

Before leaving this issue, we would add one further observation. Whereas the Court of Appeals for the Tenth Circuit felt the issue was controlled by the Gallup case, supra, and noted that the report of the case did not disclose if the condemnation there being attempted involved a way for conveying water, we do not consider the language there relied on to be decisive. That language was to the effect that coal mining was not viewed by the court as belonging "* * * in a class with * * * irrigation in * * * New Mexico * * *," but rather was considered by them "* * * in a class with the timber or lumbering industry which was involved in the Threlkeld case." The Tenth Circuit Court concluded that "* * * logic dictates that the New Mexico court would not deny the power of eminent domain in aid of coal mining under one statute, and sustain it under the statute invoked here merely because it speaks in terms of 'beneficial use' of water."

However, this resort to logic contains a basic flaw in that it assumes that both statutes (i. e., § 22–9–30, supra, involved in

the Gallup case, supra, and § 75–1–3, supra, here in question) were "in aid of coal mining." Section 75–1–3, supra, is not in aid of coal mining, but rather "in aid of" the distribution of water for beneficial uses. This difference is crucial. In view of our state's environmental situation, the distribution of water is of paramount importance, justifying the defining of such distribution as a "public use." The same cannot be said of coal mining.

Having determined that Kaiser could legally and constitutionally acquire the right of way to convey its water across the property of Ranch by condemnation, we must still consider if Ranch could recover in an action in trespass because Kaiser entered the property without first instituting legal proceedings seeking to condemn. Otherwise stated, is inverse condemnation the only legal remedy open to Ranch for Kaiser's entering and utilizing the land of Ranch, or may Ranch sue in trespass? No question of the right to the equitable remedy of injunction is here presented.

To answer the question we first examine two recent decisions by this Court. Our latest holding on the subject is found in Garver v. Public Service Company of New Mexico, 77 N.M. 262, 421 P.2d 788 (1966), being an appeal from dismissal on motion of a suit seeking compensatory damages for trespass, for negligent maintenance of electric lines, and for slander of title. We held that plaintiff could not recover damages for trespass by the defendant utility, and that plaintiff's only right of action was one in inverse condemnation. In so holding we relied on Zobel v. Public Service Company, 75 N.M. 22, 399 P.2d 922 (1965), wherein damages for trespass were sought for alleged entry together with cutting of a corridor through trees and staking of a course for a proposed new power line before the filing of any action or proceeding seeking to condemn. We there held that § 68–1–4, N.M.S.A., 1953, which gives the right to recover damages in inverse condemnation, provided the exclusive means for recovering damages.

Ranch would distinguish the present case from Garver and Zobel, both supra, on the basis that the eminent domain statutes there involved were §§ 68–1–4 and 22–9–11, N.M.S.A., 1953, whereas here, Kaiser's rights, if any, arise out of § 75–1–3, supra, and the applicable inverse condemnation statute is § 22–9–22, N.M.S.A., 1953, as amended (Supp.1969). Further, a distinction is urged because, in Zobel, the entry was recognized as one permitted for the purpose of making surveys, and condemnation was thereafter sought as provided in the statute; whereas, in the instant case, Kaiser neither entered to make surveys, although the applicable statute makes provision for such an entry, nor did Kaiser seek condemnation as provided in the statute, but proceeded without any pretense of complying with the law.

In Garver, supra, so far as we can discern, the defendant had entered and constructed its line without benefit of law, but we do not perceive that this fact made any difference so far as the rule of exclusive remedy there applied was concerned.

Although we recognize that the statutes here applicable differ in certain particulars from those being considered in Zobel and Garver, supra, and even though the facts may not be exactly comparable, we neither see in the language differences of the statutes, nor in the fact variations, any true basis for a different result. We have considered 6 Nichols, supra, § 28.1, relied on by Kaiser, from which we quote:

> "In those jurisdictions in which there may be a constitutional taking of property by virtue of an exercise of the power of eminent domain prior to the payment of compensation, such procedure is justified by reason of legislative provision for an adequate method of obtaining just compensation by the owner. Under such circumstances the statutory remedy is deemed exclusive and the owner is prevented from asserting the ordinary common law actions arising from interference with his title or possession. * * *"

We observe that our Zobel and Garver cases, supra, are cited in support of the quoted language.

We have also noted 6 Nichols, supra, § 28.22(1), advanced by Ranch as controlling. We would observe that we do not consider the section applicable because, as already pointed out, we are not here called upon to consider, nor do we express an opinion on the question of the availability of equitable remedies such as injunction to restrain the taking, since we have already determined that it was lawful. But see The Arizona & Colorado Railroad Company of New Mexico v. The Denver & Rio Grande Railroad Company, 13 N.M. 345, 84 P. 1018 (1906); 16 N.M. 281, 117 P. 730 (1911), aff'd 233 U.S. 601, 34 S.Ct. 691, 58 L.Ed. 1111 (1914). For the same reason we do not consider as helpful in the instant case the Annotations in 93 A.L.R.2d 465 and 133 A.L.R. 11, relied on by Ranch.

Also, Ranch would have us restrict the area for exclusive resort to inverse condemnation to the situations where there has been an incidental injury or damage with no direct taking, or where there has been an unintentional taking. While admittedly damages without a direct taking give rise to an inverse condemnation action, see Springer Transfer Co. v. Board of Com'rs of Bernalillo County, 43 N.M. 444, 94 P.2d 977 (1939), we do not see anything in the language of the statute to justify the limitation urged upon us. Neither do we see any reason to hold our statutory inverse condemnation to be the exclusive remedy where the action is against the sovereign, but not when it is against a private condemnor. Section 22–9–22, supra, here applicable, makes not only the "state of New Mexico or any agency or political subdivision thereof" liable to the owner of property under the circumstances therein set forth, but also makes "[a]ny person, firm or corporation authorized by the Constitution or laws of this state to exercise the right of eminent domain" equally subject to suit. This section is clear that suit is permitted by the landowner, when there has been not only a damaging of private property but a taking as well, if just compensation has not been paid, or a proper condemnation action either has not been instituted or prosecuted to final judgment. We see in the plain language of the statute a complete method for obtaining compensation in the exact circumstances of this case. Therefore, it follows, and we so hold, that the objective sought to be accomplished by the inverse condemnation statute is not so limited as urged above, and that the prior applications of the more restricted statutes in Zobel and Garver, supra, are equally applicable here.

We would add a word to the effect that we fully appreciate the dilemma faced by both parties at the outset of the dispute that gave rise to this litigation. There had been no clear pronouncement by this Court that a party in Kaiser's position could exercise eminent domain for a right of way to convey water to a coal mine. Kaiser had the choice of attempting to obtain an answer to the question either by commencing condemnation which would have involved protracted litigation on the question of whether a public use was present, and their right to condemn, or they could have sought declaratory relief in the first instance as they belatedly have done in this proceeding. On the other hand, they could take a calculated risk and proceed on the theory they had the right to condemn, and if they did not commence an action, that in the end Ranch would receive the same damages through inverse condemnation as it would have through condemnation.

Of course, if Kaiser miscalculated and it was determined that they were mistaken in their belief that they had the right to condemn, the trespass action undertaken by Ranch would have been proper, and substantial damages would have been adjudged against Kaiser as a trespasser.

While we certainly do not recommend proceeding as Kaiser did in the instant case, and would again emphasize the risks of damages of major consequences, we must nevertheless conclude that in this instance no one has suffered. Kaiser had the right under the facts of this case to con-

demn the right of way they occupied for the purpose for which it was taken, and may be held liable for damages to the owner only in an inverse condemnation action. It follows that the judgment appealed from should be affirmed.

It is so ordered.

COMPTON and TACKETT, JJ., WALDO SPIESS, C. J., Ct. App., and JOE ANGEL, D. J., concur.