725 P.2d 572

W.G. and Betty L. KENNEDY, his wife,
Plaintiffs-Appellants,

v.

YATES PETROLEUM CORPORATION,
a New Mexico corporation,
Defendant-Appellee.

No. 15873.

Supreme Court of New Mexico.

Sept. 10, 1986.

McCormick, Forbes, Caraway & Tabor, John M. Caraway, Carlsbad, for plaintiffs-appellants.

Dickerson, Fisk & Vandiver, Chad Dickerson, Rebecca Dickerson, Artesia, for defendant-appellee.

## OPINION

SOSA, Senior Justice.

This case comes to us after the hearing upon remand required by our previous opinion in *Kennedy v. Yates Petroleum Corp.*, 101 N.M. 268, 681 P.2d 53 (1984) (*Kennedy I*). The background of the case is set out more fully in that opinion, which we here incorporate. On this appeal, the sole issue is whether the trial court erred in its determination that the use of the Yates natural gas pipeline is a public use as required for condemnation under the Eminent Domain Code, NMSA 1978, Section 42A–1–22 (Repl.Pamp.1981). We affirm the trial court.

In *Kennedy I*, we instructed the trial court to conduct an evidentiary hearing to determine whether the Yates pipeline satisfied our case law criteria for establishing "a real and substantial relation to the public use" for condemnation purposes. *Id.* at

271, 681 P.2d at 56. Following the remand, the trial court consolidated Kennedys' trespass action with Yates' petition for condemnation. At the hearing Yates introduced evidence which demonstrated two primary public benefits of the pipeline.

First, said Yates, the pipeline was required by New Mexico Oil Conservation Commission Rule 306, which forbids wasting casinghead gas that arises in conjunction with oil production. The Eagle Creek Field served by the pipeline produces approximately one thousand barrels of oil per day, while the pipeline itself carries approximately one million cubic feet of gas per day.

Second, not only does Yates' production generate substantial revenues for both federal and state governments through royalty and tax payments, but also, more importantly, the oil and gas industry as a whole provides more than 50% of the total revenue of the State of New Mexico. The trial court found that through direct taxes and other revenue sources, the industry provided the State with revenues of more than one billion dollars in 1983.[1]

Kennedys do not challenge these findings, but argue instead that a general public benefit cannot confer public use status on a pipeline whose sole direct beneficiaries are private interests. They contend that three legal theories support their request for reversal of the trial court's conclusions of law:

I.   Case law does not permit the result reached;

II.  Yates is not authorized to condemn the property because it is not a "common carrier" certified by any state or federal regulatory agency; and

III. Under the facts of this case, it is unconstitutional for Yates to condemn pursuant to NMSA 1978, Section 70–3–5(A) (Cum.Supp.1985).

**I.  Case Law on Inverse Condemnation**

■ As our previous opinion made clear, the task of the trial court is to determine whether a particular set of facts can sustain the presumption of public use created by legislative enactment. Kennedys contend that the pipeline in question is analogous to railroad lines; that natural gas resembles the resources of timber and coal; and that this court has consistently held condemnations of such easements for such resources to be unconstitutional, effectively overruling legislative pronouncements to the contrary. *Gallup American Coal Co. v. Gallup Southwestern Coal Co.*, 39 N.M. 344, 47 P.2d 414 (1935) (coal); *Threlkeld v. Third Judicial District Court*, 36 N.M. 350, 15 P.2d 671 (1932) (timber).

Yates responds that this Court adopted a different standard of review in *Kaiser Steel Corp. v. W.S. Ranch Co.*, 81 N.M. 414, 467 P.2d 986 (1970), wherein we upheld the legislative presumption of a public use in the distribution of water as "well-nigh conclusive." *Id.* at 420, 467 P.2d at 992. Kennedys respond that the *Kaiser* decision rests on the unique nature of the resource of water, which has been preserved specifically by provisions of our constitution, N.M. Const. art XVI, §§ 1, 2 and 3. Thus, by long standing tradition, condemnation has been allowed by this Court for storing and conveying water for irrigation purposes, because beneficial use of water is always a public use. The decision in *Kaiser*, the argument goes, merely extends the scope of beneficial use from irrigation to include industrial use of water.

In the instant case, therefore, another way to pose the question is whether oil and gas, as substances of importance to the public, should be categorized with water rather than with other resources such as timber and coal. The trial court concluded that oil and gas production in New Mexico is comparable to metal mining in Nevada, a *sine qua non* of that state's formation and very existence. *See Dayton Gold and Sil-*

---

1.  We take judicial notice of recent economic events that confirm the importance of the oil and gas industry in this state.

*ver Mining Co. v. Seawell,* 11 Nev. 394 (1876). Moreover, the extensive regulatory scheme established by the legislature demonstrates the paramount importance of efficient production and distribution of oil and gas, which are used by virtually the entire public.

Indeed, if water is the life blood of our agricultural and domestic activity, so it may be said that oil and gas are the fuel that keeps our economy moving. It is more appropriate to think of both resources as resembling utilities, rather than as commodities for private consumption. The evidence before the trial court confirmed that the gas in Yates' pipeline flows into the stream of commerce, and is essential to the efficient production of oil from the Eagle Creek Field. Thus, we hold that the court was correct in concluding that this particular pipeline bears a real and substantial relation to the public use as required by statute and our case law.

## II. "Common Carrier" Requirement

■ Here Kennedys maintain that Yates cannot condemn unless it is a common carrier, in which case it is also required to have a "Certificate of Public Convenience and Necessity" from the Corporation Commission. Yates admits that it is not a common carrier and that it does not have a certificate, but denies that one is required. We agree with the implication of Kennedys' argument that if Yates were a common carrier, then its right to condemn would be difficult, if not impossible, to dispute.

The Pipeline Eminent Domain statute, however, specifically states that "[a]ny person, firm, association or corporation may exercise the right of eminent domain." § 70–3–5(A). The legislature has required that some pipelines be certified and regulated as common carriers. NMSA 1978, § 70–3–1 and –2 (Cum.Supp.1985). But expressly excluded from these regulatory requirements are "gathering lines or systems operated exclusively for the gathering of oil or gas in any field or area," NMSA 1978, § 70–3–3 (Cum.Supp.1985). The pipe-

line in question here is a gathering line, exempt from regulation. We conclude that the legislature could have chosen to exclude gathering lines from exercising the right of eminent domain, but it did not, as revealed by the clear and unambiguous language of Section 70–3–5.

Kennedys cite the *Threlkeld* case for the proposition that a condemnor must follow the laws that apply to common carriers. Such a requirement was provided explicitly by the statute at issue in *Threlkeld.* It is conspicuously absent from the statute here. This Court will not impose additional conditions onto the exercise of a right provided by the legislature. *See Southern Natural Gas Co. v. Poland,* 384 So.2d 528 (La.Ct.App.1980).

## III. Constitutionality of the Statute

■ This is at once Kennedys' strongest and weakest argument, the theoretical underpinning of the two previous points. In essence, Kennedys urge this Court to adhere to the "orthodox" view that the legislature can never confer a private benefit simply by proclaiming one party's use of another's property to be a "public use," even though it may be in the "public interest." To do so would be to contravene the New Mexico Constitution, Article II, Section 20, which mandates that "[p]rivate property shall not be taken or damaged for public use without just compensation."

We have addressed this dilemma directly in our previous decisions. In *Threlkeld* we defined and defended the "orthodox doctrine" [as opposed to the "liberal" doctrine, which virtually equates "public benefit" with "public use"]; in *Gallup* our holding was somewhat hedged, as we declined to be confined too strictly to either view. Justice Watson, writing for the majority in both cases, recognized the need for a limit to the liberal view, lest private property become subject to the "whim of Legislature." *Gallup,* 39 N.M. at 348, 47 P.2d at 416. At the same time, the opinion carefully limited the case to its facts, holding that:

> Here we are concerned with coal mining. As an essential or paramount industry, in its importance to the existence and func-

tioning of the state and to the livelihood of the people, it does not seem to us to belong in a class with metal mining in Nevada, as appraised in *Dayton Mining Co. v. Seawell, supra,* or with irrigation in Utah or New Mexico, as appraised in *Nash v. Clark, supra,* and in *City of Albuquerque v. Garcia,* 17 N.M. 445, 130 P. 118, and other New Mexico cases.

This historical background explains both the result and the reasoning in *Kaiser* as well as in *Kennedy 1.* It is not unconstitutional for the legislature to create a private right of condemnation in a private entity, where the purpose is beneficial use of a vitally important natural resource. When, in a given instance, an individual seeks to exercise that right, it must demonstrate to the district court that its use is consistent with that public purpose. As we said in *Kaiser,* the ultimate guarantee of public use is, therefore, a judicial one, giving due deference to legislative intent.

In light of the foregoing, the judgment of the district court is affirmed.

IT IS SO ORDERED.

RIORDAN, C.J., and STOWERS, J., concur.