2006-NMCA-108

142 P.3d 951

**HYDRO RESOURCES CORPORATION,**
a New Mexico corporation,
Plaintiff–Appellee

v.

**Harris GRAY and William J. Frost,**
individuals, Defendants–
Appellants.

No. 24,012.

Court of Appeals of New Mexico.

June 27, 2006.

Certiorari Granted, No. 29,931,
Aug. 25, 2006.

L. Michael Messina, L. Michael Messina, P.A., Tim De Young, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Nancy L. Simmons, The Law Offices of Nancy L. Simmons, P.C., Albuquerque, NM, for Appellee.

Charles T. DuMars, Christina Bruff DuMars, Law & Resource Planning Associates, P.C., Albuquerque, NM, for Appellants.

## OPINION

ROBINSON, Judge.

{1} Harris Gray and William Frost (together, "Gray") appeal from a summary judgment favoring Hydro Resources Corporation in a dispute over water rights associated with mining claims. Gray claims ownership of the water rights based on his predecessor-in-interest's (a former mineral lessee) development of the water rights under a mineral lease from Hydro's predecessor-in-interest. Hydro claims ownership contending that the mineral lessee developed the water rights on behalf of the lessor and the water rights are appurtenant to mining claims owned by Hydro and mill sites developed for the mining operation. The district court quieted title in the water rights in Hydro. We affirm, holding that Gray's predecessor-in-interest developed the water rights as the agent and on behalf of Hydro's predecessor-in-interest. Affirming on that ground, we do not address Hydro's contention that the water rights are appurtenant to the mining claims and mill sites.

## I. BACKGROUND

{2} Hydro's predecessor-in-interest, Inspiration Development Company (Inspiration), owned patented and unpatented mining claims on public lands known as Copper Flat (the Property) located in Sierra County, New Mexico. In July 1974, Inspiration leased the mining claims to Corbin Robertson. In June 1980, Robertson assigned his interest in the mineral lease to Copper Flat Partnership

(the Partnership), Gray's predecessor-in-interest.

{3} The mineral lease provided that the lessee "shall be permitted to mine using all necessary resources [including] the right to use all processes and construct and maintain all works" the lessee may consider "necessary or desirable" for mining, removing, saving, milling, concentrating, treating, shipping, and selling, or otherwise disposing of, minerals from the mining claims. The lease further provided that the lessee may, at its own expense, but in the name of the lessor, relocate, amend, or apply for patents on any unpatented mining claims on the Property. The lease, however, was silent on the subject of water rights.

{4} When the Partnership came on the scene, it drilled several wells on mill sites owned by Inspiration and used the water from the wells to carry on mining operations. In 1984, the Partnership filed declarations of ownership of underground water rights with the Office of the State Engineer (the OSE), claiming to be the owner of water rights based on the wells it drilled and the water it used as lessee under the mineral lease. According to the declarations, the water was appropriated and put to beneficial use by the Partnership for, among other purposes, mining and milling. Although the Partnership listed itself as the owner of the mill sites on which the wells were located, it is undisputed that Inspiration was the owner of the mill sites. It is also undisputed that development of the water rights was essential to the mining operation. *See* Gary L.Greer et al., *American Law of Mining, Acquisition of Water Rights,* § 113.01(1) (stating that mining operations require water); John N. Pomeroy, *A Treatise on the Law of Water Rights,* § 14 (1893) (indicating that water is "an indispensable requisite for carrying on mining operations").

{5} The Partnership ceased mining activities in December 1986, thereby terminating the mineral lease. Upon termination of the lease, the Partnership was required to surrender possession of the Property to Inspiration. In April 1987, the Partnership conveyed its interest, "if any," in the water rights to Gray by quitclaim deed and bill of sale. Gray acknowledged that the Partnership did not make any statements, representations, or warranties, concerning "the existence, priority, extent, legal validity, or viability" of the water rights in question.

{6} Meanwhile, in August 1987, Inspiration leased its mining claims to Hydro with an option to purchase. The lease specifically included all "appurtenant" water rights. In November 1989, Hydro exercised its option to purchase. Inspiration quit-claimed to Hydro "all the right, title and interest" in the mining claims, including all "appurtenances." Hydro is the current owner of the mining claims.

{7} In January 2001, Hydro sued to quiet title to the water rights. Gray counterclaimed to quiet title as well. In proceedings on cross-motions for summary judgment, Gray asserted that the Partnership owned the water rights by prior appropriation and through the filings with the OSE. Hydro asserted that the Partnership owned the water rights as Inspiration's agent and that the water rights were essential to the mining operation and appurtenant to the mining and associated mill site claims owned by Hydro. The district court granted Hydro's motion for summary judgment and denied Gray's motion for summary judgment. This appeal by Gray followed.

## II. DISCUSSION

### A. Standard of Review

{8} When a summary judgment comes before us on review based on undisputed facts, our review is de novo. *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

### B. Water Law and Mining Law

{9} New Mexico follows the doctrine of prior appropriation. N.M. Const. art. XVI, § 2; *State ex rel. Martinez v. City of Las Vegas,* 2004–NMSC–009, ¶¶ 28–29, 135 N.M. 375, 89 P.3d 47; *Kaiser Steel Corp. v. W.S. Ranch Co.,* 81 N.M. 414, 417, 467 P.2d 986, 989 (1970). Beneficial use is "the basis, the measure and the limit of the right of the use of water." N.M. Const. Art. XVI, § 3; *see also* NMSA 1978, § 72–12–2 (1931);

*Martinez,* 2004–NMSC–009, ¶ 34, 135 N.M. 375, 89 P.3d 47. One acquires a water right by being the first to divert and apply water to beneficial use. *See id.; Albuquerque Land & Irrigation Co. v. Gutierrez,* 10 N.M. 177, 61 P. 357 (1900). The law of prior appropriation has its roots in mining and evolved from mining customs that developed in the American West during the nineteenth century. *See generally,* Pomeroy, *supra,* § 14. As explained by an Oregon court:

> During the nineteenth century, the federal government began to permit the mining of public lands in the West. Because the government retained title to the land itself, the traditional rules of riparian rights did not readily apply to the use of waters running through the mining claims. Mining customs developed over time, however, to fill the need of the times. One such custom was that rights to use water in mining operations could be obtained as an incident of the mining activity and that competing claims to the use of the water would be determined by the time of actual appropriation of the water for that use.

*Kinross Copper Corp. v. State,* 160 Or.App. 513, 981 P.2d 833, 838 (1999); *see also Yeo v. Tweedy,* 34 N.M. 611, 616–20, 286 P. 970, 972–73 (1929) (discussing the rejection of riparian law in favor of prior appropriation in arid western states, including New Mexico).

**{10}** Eventually, the doctrine of prior appropriation became embodied in federal mining law. *See* Pomeroy, *supra,* § 17; *see also Cal. Or. Power Co. v. Beaver Portland Cement Co.,* 295 U.S. 142, 155, 55 S.Ct. 725, 79 L.Ed. 1356 (1935). Both the Mining Acts of 1866 and 1870 contain provisions protecting the vested, pre-existing water rights of appropriators for mining and other purposes and reaffirm that water rights are governed by state, not federal, law. 30 U.S.C. §§ 51, 52 (1994); *see Andrus v. Charlstone Stone Prods. Co.,* 436 U.S. 604, 612–13, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978); *see also State ex rel. State Game Comm'n v. Red River Valley Co.,* 51 N.M. 207, 218, 182 P.2d 421, 428 (1945) (recognizing that appropriation of public waters began as a local mining custom which the United States government was bound to protect). Moreover, in 1877, Congress passed the Desert Land Act, which effectively severed water rights from public lands and required that such water rights be obtained in accordance with applicable state water laws. 43 U.S.C. § 321 (1994); *Cal. Or. Power Co.,* 295 U.S. at 158–62, 55 S.Ct. 725. Thus, patented and unpatented mining claims, when issued by the United States government, carry with them no appurtenant water rights. *See State ex rel. Bliss v. Dority,* 55 N.M. 12, 21, 225 P.2d 1007, 1013 (1950). With this background in mind, we turn now to the parties' contentions.

## C. The Parties' Contentions

**{11}** The Partnership drilled the wells on mill sites developed for Inspiration's mining claims, and developed the water for use in mining operations on Inspiration's mining claims and under the 1974 mineral lease between Inspiration and Robertson. Gray claims that, pursuant to its possessory interest as mineral lessee, the Partnership held a possessory interest in the mining claims, and that, pursuant to the terms of the lease, the Partnership had the right to take whatever means were necessary to extract minerals from the Property, including drilling wells and perfecting its own water rights. *See First State Bank v. McNew,* 33 N.M. 414, 269 P. 56 (1928) (supporting the general proposition that one having a mere possessory interest in land, like a lessee or licensee, may own or acquire water rights by appropriating and beneficially using water on land owned by another). Gray asserts that because the Partnership exclusively developed the water for its own beneficial use, the Partnership became the owner of the water rights based on a straight application of the prior appropriation doctrine, and that title to the water rights then vested in Gray.

**{12}** Hydro asserts that the Partnership developed the water rights on behalf of Inspiration for beneficial use essential to the mining operations, and that this development occurred and could only occur by reason of the Partnership's status as a lessee under the mineral lease. According to Hydro, absent an express conveyance in the lease, a lessee cannot acquire water rights developed under the lease on the lessor's land and necessary

and indispensable to the mining operations. Thus, the Partnership, as mineral lessee, had only the right to use the water in question for the term of the lease and, further, the water rights could not be severed from the mining or mill site claims without destroying their value.

{13} Of course, the problem here is the mineral lease's silence on the subject of water rights. Because of that, we have a troublesome intersection between the law of prior appropriation with that of mining, property, and agency. Neither party provides instructive, much less controlling, authority pointing us to a result when, as here, a mineral lease has no provision regarding water rights to be developed for the mining operations.

{14} We are persuaded that the law of prior appropriation should not, under the circumstances in this case, place ownership of the water rights in the Partnership and later Gray. Absent evidence of an intent in 1974 of Inspiration and Robertson to the contrary, we conclude that the mineral lease must be construed such that the Partnership acted on behalf of Inspiration and as Inspiration's agent in developing the water rights for use in the mining operations. *See First Sec. Bank v. State*, 49 Idaho 740, 291 P. 1064, 1066 (1930) ("If the water right was initiated by the lessee, the right is the lessee's property, unless the lessee was acting as agent of the owner."). Gray's claim derives solely and exclusively from the rights and actions of the Partnership as lessee of the mining claims owned by Inspiration. The Partnership could not develop the mill sites and water, but for the lease permitting it to mine and to develop mill sites and water for the mining operations. A lessee under a mineral lease ordinarily acts for the mutual benefit of both the lessor and the lessee. *See Killam Oil Co. v. Bruni*, 806 S.W.2d 264, 267 (Tex.App. 1991) ("The object of a mineral lease is to secure development of the property for the mutual benefit of the parties."); 58 C.J.S. *Mines and Minerals* § 194 (1998) (explaining that parties to a mineral lease are engaged in "a cooperative venture in which lessor contributes the land and lessee contributes the capital and experience necessary to develop the minerals for the mutual benefit of both

parties"). A mineral lessee may cease mining, and a mineral lease may terminate, but mining operations can continue. Water is essential for continued mining operations. Under the circumstances in this case, we will not read into the lease, nor will we extend the law of water rights to permit the lessee to walk away with water rights that could be developed by the Partnership only through the lease and as lessee. Water was a "resource" the lessee was permitted under the lease to develop and use in order to perform under the lease. There is no question that the water rights were acquired for the benefit of the lessor's mineral lands.

{15} As well, the mineral lease permitted the lessee to "relocate, amend, or apply for patent[s] on any unpatented mining claims" owned by Inspiration, but "in the name of Inspiration" and at the lessee's own expense. Although it does not appear from the record that the Partnership relocated, amended, or applied for patents on any of Inspiration's existing mining claims, Hydro did present evidence that additional mill site claims were staked or located in the name of Inspiration for the purpose of developing water for the mining operation. Although in the district court proceedings Gray first denied this assertion, Gray presented no evidence to controvert the statement pursuant to Rule 1—056(E) NMRA. Under federal law, mill sites must be used for the development of mining claims. 30 U.S.C. § 42(b) (1994). Only the owners or proprietors of patented vein or lode mining claims are permitted to apply for mill sites. *Id.*; 43 C.F.R. § 3864.1–1. We conclude that the Partnership's development of water rights was on behalf of Inspiration and as Inspiration's agent.

{16} Gray's reliance on the declarations of ownership filed by the Partnership with the OSE does not change our view of the ownership of the water rights. *See* NMSA 1978, § 72,–12–5 (1931) (providing that claimants of a vested water right from underground sources may file declarations of their claims with the OSE). Gray does not indicate how such declarations prove his ownership under the circumstances here. Nor are we persuaded by Gray's argument that Hydro is not entitled to claim ownership of the water

367

rights because Hydro only paid $10 for the mining claims and thus did not intend to acquire water rights in the conveyance of the mining claims. Our review of the lease and option to purchase between Inspiration and Hydro indicates that the parties agreed that the sum of $250,000 would be paid for the purchase of the mining claims, including appurtenant water rights. The quitclaim deed from Inspiration to Hydro also specifically includes "appurtenances" and recites that Hydro paid "the sum of Ten Dollars ($10.00), and other good and valuable consideration." (Emphasis added.)

## CONCLUSION

{17} We affirm the grant of summary judgment in favor of Hydro Resources Corporation.

{18} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and JONATHAN B. SUTIN, Judges.